**Sue NEEL, Plaintiff and Appellant,**

v.

**STATE of Utah, Defendant and Appellee.**

**No. 920547–CA.**

Court of Appeals of Utah.

May 21, 1993.

Daniel L. Wilson, Ogden, for plaintiff and appellant.

Jan Graham and Brent A. Burnett, Salt Lake City, for defendant and appellee.

Before BENCH, ORME and RUSSON, JJ.

BENCH, Judge:

Appellant, Sue Neel, appeals the trial court's dismissal of her claim against the State of Utah for insurance benefits. We reverse and remand.

courts need not address every issue raised by      the parties on appeal).

## BACKGROUND

In December of 1990, Neel was a passenger in a State-owned vehicle when she was injured in an accident. Utah law requires the State to maintain security providing certain benefits to persons injured in automobile accidents involving state-owned vehicles. Neel filed a claim for benefits with the State Department of Risk Management. She filed directly with the State because the State was self-insured. When no benefits were timely paid, Neel filed suit in district court, seeking payment from the State as the "insurer" of the vehicle.

The State moved to dismiss Neel's complaint. It argued that since she was suing the State, she must comply with the procedural requirements of the Utah Governmental Immunity Act. Utah Code Ann. § 63–30–1 through –38 (1989). Specifically, the State argued that Neel failed to comply with section 63–30–12 which provides that a party with a claim against the State must file a notice of claim with the attorney general and the agency involved before filing a lawsuit. Additionally, the State claimed that she failed to comply with section 63–30–19 which requires that any lawsuit filed against the State be accompanied by an undertaking to cover taxable costs in the event the State prevails.

Neel responded that she was not required to comply with the notice and undertaking requirements because she was bringing an action in contract, and contract suits are expressly exempted from these procedural requirements by section 63–30–5(1). The trial court nevertheless granted the State's motion and dismissed Neel's complaint without prejudice.

Neel asserts on appeal that the trial court misconstrued her contract claim to be a tort claim. She contends that since the State is self-insured, she must bring her contract claim for benefits against the State directly, just as if she were bringing it against a separate insurer of the State. Consequently, she argues that the notice of claim and the undertaking requirement do not apply to her lawsuit. We agree.

## STANDARD OF REVIEW

■ When we review a trial court's decision to dismiss a cause of action, we assume that the factual allegations made by the plaintiff are true. We then review the trial court's ruling to see whether the prevailing party was nevertheless entitled to dismissal as a matter of law. We therefore apply a correction-of-error standard of review to the trial court's ruling. *Anderson v. Dean*, 841 P.2d 742, 744 (Utah App.1992).

## ANALYSIS

■ Neel's assertion that her claim against the State may be heard without complying with the procedural requirements of the Governmental Immunity Act stems from the State's statutory obligation to insure its motor vehicles.

> The state of Utah and all its political subdivisions and their respective departments, institutions, or agencies shall maintain owner's or operator's security in effect continuously with respect to their motor vehicles.

Utah Code Ann. § 41–12a–301(3) (1988).

In order to maintain "owner's or operator's security," the State must exercise one of the following methods of securing benefits for a party injured in an automobile accident involving a State vehicle: (1) an insurance policy; (2) a surety bond; (3) a deposit with the state treasurer; (4) a certificate of self-funded coverage; or (5) a policy issued by the Risk Management Fund. Section 41–12a–103(9).[1] Each of

---

**1.** Regardless of the form of security selected, the owner must provide the intended beneficiaries the full benefits required by statute.

"Owner's or operator's security," "owner's security," or "operator's security" means any of the following:

(a) an insurance policy or combination of policies *conforming to Section 31A–22–302*

which is issued by an insurer authorized to do business in Utah;

(b) a surety bond issued by an insurer authorized to do a surety business in Utah in which the surety is subject to the minimum coverage limits and other requirements of policies *conforming to Section 31A–22–302,* which names the department as a creditor

these methods must provide the following "personal injury protection" coverages and benefits ("PIP benefits"): (1) reasonable medical expenses; (2) lost income resulting from an inability to work; (3) work the injured person would have performed for his or her family; (4) funeral benefits; and (5) wrongful death benefits. *See* section 31A–22–307. These PIP benefits must be provided for any "natural person whose injuries arise out of an automobile accident occurring while the person occupies a [covered] motor vehicle...." Section 31A–22–308(3). Finally, section 31A–22–309(5) provides that a claimant entitled to PIP benefits may sue the insurer of a vehicle if the insurer fails to pay the PIP benefits within thirty days.

Neel brought her action against the State in accordance with the foregoing statutes. The State moved to dismiss Neel's cause of action for her failure to comply with the Governmental Immunity Act. Neel admits that she has not provided the notice of claim and the undertaking required by the Act. She claims, however, that she is exempted from these requirements because her claim against the State is contractual in nature. Section 63–30–5(1) of the Act provides that:

> Immunity from suit of all governmental entities is waived as to any contractual obligation. Actions arising out of contractual rights or obligations shall not be subject to the requirements of Sections 63–30–11, *63–30–12*, 63–30–13, 63–30–14, 63–30–15, or *63–30–19*. (Emphases added.)

In response, the State faults Neel for not identifying a contract between her and the State that has been breached. It is unnecessary, however, for Neel to identify a direct contract between the parties since Neel is an intended third-party beneficiary. Neel correctly asserts that section 31A–22–309(5) expressly states that an action

brought to recover PIP benefits from the insurer of a vehicle is contractual. Section 31A–22–309(5) provides: "If the insurer fails to pay the expenses when due, ... [t]he person entitled to the benefits may bring an action *in contract* to recover the expenses...." (Emphasis added.) The narrow issue involved in this case is whether the State's assumption of the role of self-insurer has altered the contractual nature of an action brought against the State, as the insurer, to recover PIP benefits.

The State claims that the reference to "insurer" in section 31A–22–309(5) cannot include the State and points to the statutory definition of "insurer" found in section 31A–1–301(48)(a), which provides:

> "Insurer" means any person doing an insurance business as a principal, ... and any person purporting or intending to do an insurance business as a principal on his own account. *It does not include a governmental entity, as defined in Subsection 63–30–2(3), to the extent it is engaged in the activities described in Section 31A–12–107.*

(Emphasis added.) The State further cites to section 31A–12–107, which provides:

> Notwithstanding any other provision of this title, a governmental entity, as defined in Subsection 63–30–2(3), *is not an insurer for purposes of this title and is not engaged in the business of insurance to the extent it is covering its own liabilities under Title 63, Chapter 30, the Governmental Immunity Act,* or engaging in other related risk management activities related to the normal course of its activities.

(Emphasis added.) Finally, the State argues that the provisions of title 31A do not pertain to self-insurers. Section 31A–1–103(3), states: "Except as otherwise ex-

under the bond for the use of persons entitled to the proceeds of the bond;
   (c) a deposit with the state treasurer of cash or securities *complying with Section 41–12a–406;*
   (d) maintaining a certificate of self-funded coverage *under Section 41–12a–407;*
   (e) a policy *conforming to Section 31A–22–302* issued by the Risk Management Fund created in Section 63–1–47.

Section 41–12a–103(9) (Supp.1992) (emphases added); *see also* sections 41–12a–406(2) and –407(1) (expressly referring to section 31A–22–302); and section 31A–22–302 (requiring benefits found in section 31A–22–307).

pressly provided, this title does not apply to: ... (f) self-insurance; ...."

These provisions indeed declare that the State is not a statutory "insurer" as that term is generally used in title 31A. However, this exclusion of the State from the general provisions of title 31A is superseded by specific statutory language which expressly requires that the State comply with certain portions of title 31A. *See Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214, 216 (Utah 1984) ("When two statutory provisions appear to conflict, the more specific provision will govern over the general provision."). Likewise, the exclusion of self-insurance from the effects of title 31A is overcome by other specific statutes expressly providing that sections 31A–22–302 through –309 apply to self-insurers.

Section 41–12a–401(1)(d) specifically requires that in order for the State to self-fund its motor vehicle insurance obligations, it must have a certificate of self-funded coverage. Section 41–12a–407(2) governs self-funding certificates and provides that anyone who holds

> a certificate of self-funded coverage under this chapter shall pay benefits to persons injured from the self-funded person's operation, maintenance, and use of 'motor vehicles *as would an insurer issuing a policy to the self-funded person containing the coverages under Section 31A–22–302.*

Utah Code Ann. § 41–12a–407(2) (Supp. 1992) (emphasis added). *See also* section 41–12a–306(3) (owners maintaining owner's security by means other than an insurance policy must comply with sections 31A–26–301 through –311, which govern the claim practice of "insurers").

While the State is not a statutory "insurer" for the general purposes of title 31A, section 41–12a–407(2) expressly requires the State to assume certain obligations of an "insurer" if the State elects to self-insure. By electing to self-insure, the State has elected to provide PIP benefits in the same manner as an independent insurer. If the State, as a self-insured owner, must pay PIP benefits just as if it were an independent insurer of those benefits, then there is no rational distinction between a lawsuit brought against the State for failure to pay PIP benefits and a similar lawsuit brought against an independent insurer. In both cases, the injured party is suing the "insurer" of the vehicle based upon a statutorily created contractual claim.

We therefore hold that a suit to recover PIP benefits brought directly against the State as the self-insurer of its motor vehicles is contractual in nature.[2] The State's election to self-insure cannot become a stumbling block to the swift recovery of PIP benefits. Neel's benefit claim should therefore be resolved in the same speedy manner it would have been had the State purchased an independent insurance policy.

## CONCLUSION

Neel is suing the "insurer" of the State's vehicle as is her "contractual" right under

---

**2.** Otherwise, individuals injured in State vehicles could be treated differently depending upon whether the State opted to self-insure or to purchase an independent insurance policy. If the State were to purchase an independent insurance policy, a claimant could simply file for PIP benefits without impediment. If benefits were not timely paid, the claimant could file a third-party beneficiary contract suit directly against the insurer, without the cost of an undertaking. The claimant could also file multiple benefit claims on a monthly basis as soon as expenses accrued and the insurer would be required to pay those benefits within thirty days or face an immediate lawsuit.

If, on the other hand, a claimant were required to satisfy the Governmental Immunity Act before claiming PIP benefits, the claimant would incur additional costs and be required to

jump through additional procedural hoops. The claimant would be required either to file a separate notice of claim each month in order to recover expenses as they accrue, or accumulate all claims and wait to file a single notice of claim long after the accident. In either case, the claimant may have to wait for up to ninety days, instead of thirty days, for a response from the "insurer." It is unlikely that the legislature anticipated or intended that claimants endure such delays when it allowed the State to self-insure for PIP benefits. This increased burden would clearly be inconsistent with the legislative intent found in section 31A–22–309(5) that all persons receive their PIP benefits from the insurer of the vehicle immediately and with a minimum amount of difficulty. *See also* section 31A–26–302(1) ("All claims shall be settled as soon as possible....").

the terms of section 31A–22–309(5). When the State opted to self-insure for the PIP benefits required in section 31A–22–302, it assumed the statutory role of "insurer" for purposes of section 31A–22–309(5). A lawsuit brought by an injured party against the State as the "insurer" of its vehicles therefore remains contractual in nature. Since Neel's cause of action was contractual in nature, she was exempt from the notice of claim and undertaking requirements found in the Governmental Immunity Act. The trial court therefore erred in dismissing her complaint.

The dismissal of Neel's complaint is reversed and this matter is remanded to the trial court for further proceedings.[3]

RUSSON, J., concurs.

ORME, J., concurs in result.

---

**3.** The State asserts for the first time on appeal that Neel, a State employee, is barred from seeking PIP benefits from the State by the exclusive remedy provision of the Workers' Compensation Act. *See IML Freight, Inc. v. Ottosen,* 538 P.2d 296 (Utah 1975) (employees may not recover additional benefits from an employer's no-fault insurance policy). Given the fact that only the procedural prerequisites have been placed in issue in this appeal, we do not address whether the State is otherwise immune from Neel's suit. Since that issue has yet to be addressed, it may properly be considered on remand.