Jorgina CHAMBERS and Farmers
Insurance Exchange, Plaintiffs
and Appellees,

v.

AGENCY RENT–A–CAR, INC. and Royal
Indemnity Company, Defendants and
Appellant.

No. 920820–CA.

Court of Appeals of Utah.

July 15, 1994.

Robert K. Hilder and Wesley M. Lang, Salt Lake City, for appellant.

John M. Chipman and Andrea C. Alcabes, Salt Lake City, for appellees.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

GREGORY K. ORME, Associate Presiding Judge:

Agency Rent–A–Car appeals the trial court's summary judgment ruling that Agency, who is self-insured, was primarily responsible for claims arising from an accident involving a vehicle owned by Agency and driven by Jorgina Chambers. Agency also appeals the amount of its liability as determined by the court. We affirm the court's ruling imposing primary responsibility on Agency, but reduce the amount of its liability.

## FACTS

The facts are not in dispute. Agency Rent–A–Car, as its name suggests, is in the business of renting automobiles. On December 13, 1989, Jorgina Chambers rented a vehicle from Agency in Utah. Upon renting the car, Jorgina Chambers signed a rental agreement that included the following provision:

> Customer represents and warrants that [she] has a valid policy of automobile liability, collision and comprehensive insurance in force at the time of this rental and further represents and warrants that [she] shall maintain said policy of automobile insurance in force during the time of the rental. Lessor, relying on said warranty

and representation, is not providing automobile liability, collision, comprehensive and/or medical expense insurance to the Customer or any person operating, using or otherwise occupying the said vehicle.[1]

At the time Jorgina Chambers rented the car from Agency, she owned a car which was insured by Farmers Insurance Exchange with policy limits of $20,000 for injury to one person, $40,000 for injuries per occurrence, and $10,000 for medical expenses. The Farmers policy included coverage for any other car driven by Chambers to the extent such car was not covered by "other valid and collectable insurance." For its part, Agency is a qualified self-insurer under Utah law and was certified as such by the Utah Department of Public Safety.

On December 14, 1989, a collision occurred between the car owned by Agency and driven by Jorgina Chambers and a vehicle driven by another individual. At the time of the collision, Morgan Chambers was a passenger in the Agency car driven by her mother. As a result of the accident, Morgan Chambers sustained catastrophic injuries, resulting in medical expenses that, as of March of 1992, exceeded $70,000. This lawsuit followed.

Before the trial court, Farmers Insurance acknowledged its obligation to pay its policy limits to settle the claims of Morgan Chambers, but maintained that Agency was responsible for primary coverage on this claim and must pay its limits first. Farmers Insurance had paid no-fault personal injury protection (PIP) benefits to or on behalf of Morgan Chambers and Jorgina Chambers, but claimed that Agency was primarily liable for those benefits as well. Farmers also contended that applicable law required Agency to make $80,000 available to settle any liability claims. Agency denied that it owed primary coverage for liability, that its exposure was $80,000, and that it was responsible for PIP claims.

The trial court adopted Farmers' position that a self-insurer becomes the primary "insurer" for liability and PIP claims resulting from permissive use of its vehicles. By so holding, the trial court recognized Agency's

certificate of self-funded coverage as constituting "other insurance" within the meaning of Farmers' liability policy, making Farmers' coverage secondary to Agency's self-insurance responsibility. The trial court also adopted Farmers' view that Agency's liability exposure was $80,000.

Agency, which concedes that if it had regular insurance the insurance would indeed be primary to the Farmers policy in this case, argues that the trial court erred in failing to distinguish between insurance and self-funded coverage, and thus erroneously concluded that Agency was primarily liable for the benefits at issue. Agency also argues that even if it is primarily responsible for liability coverage, its exposure is limited to $40,000.

## STANDARD OF REVIEW

As indicated, the facts of this case are not in dispute. Rather, the parties dispute the trial court's interpretation of the controlling statutes. This presents a question of law which we review for correctness, according no particular deference to the trial court's view. *Country Oaks Condominium Management Comm. v. Jones*, 851 P.2d 640, 641 (Utah 1993).

## ANALYSIS

The major issue presented is whether qualified self-insurance is distinguishable from insurance issued in accordance with Utah's Motor Vehicle Financial Responsibility Act. *See* Utah Code Ann. §§ 41–12a–101 to –606 (1993). Stated another way, is a self-insurer treated the same way as its insurance carrier would be if it had opted to comply with the financial responsibility laws by purchasing insurance rather than by self-insuring?

### A. Responsibility of Self–Insurers

■ The trial court held that Agency's status as a self-insurer did not relieve it of primary responsibility for claims involving the permissive use, operation, or maintenance of its vehicles. This conclusion neces-

---

1. We note that a complete copy of the rental agreement is not included in our record, nor have the parties argued the legal effect of any other provisions in the agreement.

sitates an examination of the duties imposed on self-insurers. In Utah, "[e]very resident owner of a motor vehicle shall maintain owner's or operator's security in effect throughout the registration period of the motor vehicle." Utah Code Ann. § 41–12a–301(2)(a) (1993). Proof of such security is required by law and may be satisfied by any of the following:

(a) a certificate of insurance under Section 41–12a–402 or 41–12a–403;

(b) a copy of a surety bond under Section 41–12a–405;

(c) a certificate of deposit of money or securities issued by the state treasurer under Section 41–12a–406; or

(d) a certificate of self-funded coverage under Section 41–12a–407.

*Id.* § 41–12a–401(1).

Of the available methods for complying with Utah's motor vehicle financial responsibility laws, Agency chose to obtain a certificate of self-funded coverage for its fleet of cars. By so choosing, Agency subjected itself to the requirements set forth in section 41–12a–407. The version of that section in effect at the time of the accident stated, in pertinent part, as follows:

The department may upon the application of any person, issue a certificate of self-funded coverage when it is satisfied that the person has and will continue to have the ability to pay judgments in an amount equal to twice the single limit amount under Subsection 31A–22–304(2). Persons holding a certificate of self-funded coverage under this subsection shall pay benefits to persons injured from the self-funded person's operation, maintenance, and use of motor vehicles *as would an insurer issuing a policy to the self-funded person* containing the coverages under Section 31A–22–302.[2]

Utah Code Ann. § 41–12a–407(1) (1988) (emphasis added).

As previously mentioned, Agency concedes that if it chose to obtain insurance for its fleet of cars, the insurer issuing such a policy would be primarily responsible in connection with accidents involving the permissive operation, maintenance, and use of its vehicles, even in situations, as here, where the driver has her own insurance. Agency contends, however, that its choice to self-insure insulates it from primary responsibility. Specifically, Agency contends that self-funded coverage is not insurance and that this distinction relieves a self-insurer of primary responsibility when an actual policy of insurance is available from which a claim may be paid.

Agency argues that the statutory definition of "insurance" supports its contention that self-funded coverage is not insurance. The Utah Code defines insurance as "any arrangement, contract, or plan for the transfer of risk or risks from one or more persons to one or more other persons." Utah Code Ann. § 31A–1–301(40) (Supp.1993). Typically, in exchange for a premium, a customer receives an insurance policy that shifts the financial responsibility to the insurer. Agency argues that because it did not receive a premium it was not providing insurance.[3] Moreover, it required Chambers to sign an acknowledgement that she had a valid automobile insurance policy in full force and effect. Therefore, Agency claims it did not issue Chambers a policy of "insurance" as that term is defined by statute.

However, the fact that Agency did not issue Chambers a policy of "insurance" is immaterial because Agency accepted the obligations that flow from self-insurance of its vehicles. Section 41–12a–407, which allows an owner to self-insure, also "expressly re-

---

2. In 1991, the Legislature amended the statute to provide a different scheme of eligibility for self-funded coverage. However, the requirement that persons holding certificates of self-funded coverage "shall pay benefits to persons injured from the self-funded person's operation, maintenance, and use of motor vehicles as would an insurer issuing a policy to the self-funded person" remains unchanged. *See* Utah Code Ann. § 41–12a–407(2) (1993).

3. However, by electing to self-insure Agency does save the cost associated with furnishing proof of owner's or operator's security by one of the other methods available. *See* Utah Code Ann. § 41–12a–401 (1993). Opting to self-insure relieves Agency of the burden of paying premiums to obtain a certificate of insurance, risking collateral to secure a surety bond, or pledging capital to secure a certificate of deposit. *See id.*

quires [a self-insurer] to assume certain obligations of an 'insurer.'" *Neel v. State*, 854 P.2d 581, 584 (Utah App.1993). In *Neel*, we held that "the State, as a self-insured owner, must pay PIP benefits just as if it were an independent insurer of those benefits." *Id.* The same rationale applies to liability coverage, as the requirements of section 41–12a–407 are not limited to PIP benefits. Rather, that statute requires that "anyone holding a certificate of self-funded insurance under this chapter shall pay *benefits* ... as would an insurer." Utah Code Ann. § 41–12a–407(2) (1993) (emphasis added). "Benefits," as we read the statute, include both PIP and liability coverage. *See* Utah Code Ann. § 31A–22–302(2) (Supp.1993). Thus, the *Neel* rationale applies equally to both PIP benefits and liability coverage.

It is well settled that the duties, obligations, and liabilities of self-insurers arise by operation of statute. *Foster v. Salt Lake County*, 712 P.2d 224, 226–27 (Utah 1985). The express language of and the purpose behind Utah's Motor Vehicle Financial Responsibility Act places liability on the self-insurer, *as an insurer*, to pay certain benefits on behalf of permissive users of its vehicles who injure third parties. *See* Utah Code Ann. § 41–12a–407(2) (1993); *Lane v. Honeywell, Inc.*, 663 F.Supp. 370, 375 (D.Utah 1987) ("Public policy as expressed in Utah law is that self-insurers must provide security for damages inflicted by themselves, and *by permissive users* of their vehicles."); *Foster*, 712 P.2d at 227 (self-insurers liable for damages inflicted by permissive users of their vehicles). Agency does not dispute that Jorgina Chambers was a permissive user of the Agency vehicle.

To summarize, Agency elected to self-insure as a means of securing benefits for any person injured in an automobile accident involving the permissive use of one of its vehicles. "Regardless of the form of security selected, the owner must provide the intended beneficiaries the full benefits required by statute." *Neel*, 854 P.2d at 582 n. 1. Utah's Motor Vehicle Financial Responsibility Act requires self-insurers to pay benefits as would an insurer. *See* Utah Code Ann. § 41–12a–407(2) (1993). Therefore, Agency, as the owner of a vehicle involved in an accident, cannot escape the primary responsibility it admits its insurer would otherwise have by electing to provide self-funded coverage for its vehicles. Accordingly, the trial court did not err in determining that Agency is primarily responsible for liability benefits.[4]

### B. Personal Injury Protection

■ The trial court also held that Agency, as a self-insurer, was primarily liable for personal injury protection benefits. The general rule is that the car owner's insurance is considered to provide primary coverage and that of the particular driver is considered to provide excess or secondary coverage. *See Christensen v. Farmers Ins. Exch.*, 443 P.2d 385, 389 (Utah 1968); *Russell v. Paulson*, 18 Utah 2d 157, 417 P.2d 658, 660 (1966). In addition, with respect to PIP benefits, Utah law specifically provides that "primary coverage is given by the policy insuring the motor vehicle in use during the accident." Utah Code Ann. § 31A–22–309(4) (Supp.1993). Accordingly, the fact that Agency opted to self-insure does not relieve it of primary responsibility to provide PIP benefits to those persons injured by the permissive use of its vehicle. *See Neel v. State*, 854 P.2d 581, 584 (Utah App.1993).

---

4. We have reviewed the authorities relied on by Agency in support of its position. Several are inapplicable because of variations in the statutory schemes at issue there as compared to Utah law. *See, e.g., Universal Underwriters Ins. Co. v. Marriott Homes, Inc.*, 286 Ala. 231, 238 So.2d 730, 732 (1970); *Hearty v. Harris*, 574 So.2d 1234, 1238–39 (La.1991). The decision in *Home Indemnity Co. v. Humble Oil & Refining Co.*, 314 S.W.2d 861, 865–66 (Texas App.1958), and the cases which employ its analysis, *see Southeast Title & Ins. Co. v. Collins*, 226 So.2d 247, 248 (Fla.App.1969); *American Family Mut. Ins. Co. v.*

*Missouri Power & Light Co.*, 517 S.W.2d 110, 112–13 (Mo.1975); *Allstate Ins. Co. v. Zellars*, 462 S.W.2d 550, 552 (Tex.1970), are not persuasive. With all due respect, it appears the court in *Humble* confused principles of primary and secondary tort liability in the respondeat superior context with the conceptually distinct question of contractually-based primary and secondary liability between insurers. *See American Family Mut. Ins. Co.*, 517 S.W.2d at 114–15 (Seiler, J., dissenting). *See also* Ray Besing, Case Note, 13 S.W.L.J. 272 (1959) (criticizing the rationale employed by the *Humble* court).

### C. Extent of Self–Insurer's Liability

 Having held that Agency is primarily responsible for the coverages in issue, we now consider the extent of that liability. The trial court held Agency liable for $80,000, or twice the minimally required policy limit. This aspect of the court's decision is troubling. It is one thing to insist that self-insurers be responsible to the same extent as insurers; it is quite another thing to double the extent of a self-insurer's responsibility.

The trial court apparently based its decision on section 41–12a–407(1), which stated:

> The department may upon the application of any person, issue a certificate of self-funded coverage when it is satisfied that the person has and will continue to have the ability to pay judgments *in an amount equal to twice the single limit amount under Subsection 31A–22–304(2).*

Utah Code Ann. § 41–12a–407(1) (1988) (amended in 1991) (emphasis added). The "single limit amount" at the time of the accident was $40,000. Utah Code Ann. § 31A–22–304(2) (1986).[5]

The trial court simply misread the statute in imposing double the statutory amount on Agency. Under section 41–12a–407(1), the "*ability* to pay judgments in an amount equal to twice the single limit" is merely the gauge of adequate financial strength selected by the Legislature; it is in no way synonymous with a requirement to pay such an amount. The actual exposure of the self-insured owner is outlined later in the section. As previously noted, the self-insured owner pays benefits "as would an insurer" who issued a policy under section 31A–22–302, which, in the case of liability, had to be at least $40,000 under section 31A–22–304. The trial court simply confused the capitalization requirement for self-insurance with the liability exposure for self-insurers, which equates to the minimum liability coverage statutorily required in automobile insurance policies.

### CONCLUSION

Agency's choice to self-insure its vehicle fleet did not relieve it of primary responsibility for claims arising from accidents involving the permissive use by others of its cars. Therefore, the trial court correctly imposed primary responsibility for liability and PIP benefits upon Agency. However, the maximum amount of Agency's liability under the statutory scheme was $40,000. The trial court erred by imposing liability of double that amount. The judgment is modified accordingly but is otherwise affirmed.

BENCH and BILLINGS, JJ., concur.

---

**5.** The current version provides for a single limit amount of $65,000. *See* Utah Code Ann. § 31A– 22–304(2) (Supp.1993).