Herman REEDEKER, Ruth Reese, Gayle Theurer, Joan Valentine, Robert Valentine, and Tom Plummer, Plaintiffs and Appellants,

v.

Norman J. SALISBURY, in his capacity as President of the American Towers Owners Association; Spencer Kimball, in his capacity as Vice President of the American Towers Owners Association; Glen Getz; William S. Richards, Joan Holmes, William T. Matlock, Don Bowne, Victor Romero, and Craig Thorley, in their capacities as past and present Trustees and Directors of the American Towers Owners Association; and John Does I through X, Defendants and Appellees.

No. 970032–CA.

Court of Appeals of Utah.

Jan. 29, 1998.

E. Barney Gesas and Bridget K. Romano, Salt Lake City, for Plaintiffs and Appellants.

Brent V. Manning and Jack M. Morgan Jr., Salt Lake City, for Defendants and Appellees.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

### INTRODUCTION

Herman Reedeker and five other owners of condominium units in the American Towers building in Salt Lake City[1] (Reedeker), appeal the dismissal of their claims against Norman J. Salisbury and other past and present trustees and officers (Trustees) of the American Towers Owners Association (Association) in connection with the Association's decision to finance a law suit against CCI Mechanical (CCI) with funds allegedly reserved under the Association's bylaws for structural repairs.

Reedeker's complaint stated causes of action based in contract, negligence, and corporate law. The Trustees responded with a motion pursuant to Rule 12(b)(6) of the Utah Rules of Civil Procedure, to dismiss all causes for failure to state a claim upon which relief may be granted. The Trustees argued that claims based in contract could not be brought against the Trustees individually and that the claims based in negligence and corporate law failed to allege intentional misconduct, as required under the Utah Nonprofit Corporation and Co–Operative Association Act, Utah Code Ann. § 16–6–18 to –112 (1995 & Supp.1997) (the Nonprofit Corporation Act).

The trial court granted the Trustees' motion to dismiss, ruling that the Nonprofit Corporation Act provided the applicable standard of care required of the Trustees and that Reedeker had failed to allege intentional misconduct as required under that Act. Although the trial court granted Reedeker leave to amend his complaint, Reedeker chose instead to appeal the trial court's dismissal order. We affirm.

### BACKGROUND

American Towers (Towers) is a condominium project in Salt Lake City consisting of both residential and commercial units. As required under the Utah Condominium Ownership Act, Utah Code Ann. § 57–8–1 to –36 (1994 & Supp.1997) (the Condominium Act),[2] a declaration (Declaration) governing the Towers condominium project was recorded in 1982. Bylaws (Bylaws), also required under the Condominium Act, were adopted pursuant to the Nonprofit Corporation Act and identified the Association as a nonprofit corporation.

Pursuant to the Declaration, each condominium owner is a member of the Associa-

---

1. These five owners are Ruth Reese, Gayle Theurer, Joan Valentine, Robert Valentine, and Tom Plummer.

2. Because the relevant sections of the Nonprofit Corporation Act and the Condominium Act have remained substantially unaltered since commencement of the Trustees' alleged wrongdoing, we cite only to the most recent versions.

tion. Each Association trustee and officer is required to be a condominium owner and thus also a member of the Association. Under both the Bylaws and the Condominium Act, owners must strictly comply with the Declaration and Bylaws, as well as applicable provisions contained in the Condominium Act. In addition, the Bylaws restrict the general management powers of trustees to those defined by law, the Declaration and Bylaws, and the Association's Articles of Incorporation.

Construction on the Towers began in 1981 and was completed in 1982. CCI was the subcontractor hired to design and construct the mechanical, plumbing, heating, ventilation, and air conditioning systems.

Almost immediately after completion of construction on the Towers, the Association became aware of possible faulty work by CCI. An October 1984 study commissioned from an independent management firm recommended that the Association examine possible remedies against CCI. In 1985, a Trustee, who was also an attorney, suggested the Association seek legal advice because the applicable statutes of limitations were running. Despite that advice, it was not until September 1991 that the Association commenced suit against CCI (the CCI Litigation). The trial court in that case granted a motion for summary judgment on all claims, in part because the claims were barred by the statute of limitations. The Association then filed an appeal of the trial court's CCI decision.[3]

The Association financed the CCI Litigation at least partially from a fund identified in the Declaration as a Reserve Fund and Working Capital Fund (Reserve Fund). According to the Declaration, the Association may use the Reserve Fund "to cover the costs of reasonably predictable and necessary repairs and replacements of the [Towers] Common Areas ... and shall cause such reserve to be funded by regular monthly or other periodic assessments against the Condominiums rather than by Special Assess-

ments." Because of the expenses of the CCI Litigation, which totaled approximately $750,000, the Reserve Fund lacked sufficient funds to pay for known and necessary repairs. Nonetheless, the Trustees believed they had authority for their action based on advice from both an attorney and an accountant.

The Association never notified condominium owners of its intent to use funds from the Reserve Fund in this manner. Even after receiving several complaints from owners in 1993 that such use was a misappropriation, the Association continued to apply Reserve Fund money to pay for the CCI Litigation. A March 1994 letter to owners explained that the Trustees had funded the CCI Litigation from the Reserve Fund "because the lawsuit is an attempt to collect funds to make repairs to the building, and any monies recovered will go into the reserve fund." In February 1995, the Trustees notified owners that the Association would seek an appeal of the trial court's CCI decision and that, because the plumbing and mechanical problems continued to increase, the Association would probably need to increase assessments to the Reserve Fund. Numerous owners again protested. In a January 1996 letter, Reedeker notified the Trustees of their alleged breaches of the Articles, Bylaws, and Declaration and demanded that they take immediate action to recover and replenish the Reserve Fund. Although the Trustees received the letter, they subsequently voted to continue using the Reserve Fund to finance the CCI Litigation. They also decided, after failing to obtain the approval of sixty percent of condominium owners for a special assessment to pay for needed repairs, to increase the monthly assessment allocated to the Reserve Fund.

On May 29, 1996, Reedeker filed a verified complaint for derivative action seeking to hold several past and present trustees and officers personally liable to replenish the Reserve Fund. The complaint contains seven substantive claims. Reedeker's contract claims allege breach of contract and breach

---

**3.** Subsequent to the commencement of Reedeker's suit, the Utah Supreme Court affirmed the trial court's summary dismissal of the CCI lawsuit, on grounds other than statute of limitations.

*See American Towers Owners Assoc., Inc. v. CCI Mechanical, Inc.,* 930 P.2d 1182, 1187–94 (Utah 1996).

of implied covenant of good faith and fair dealing. His negligence-based claims allege negligence, gross negligence, and breach of duty of care. His claims based in corporate law allege breach of fiduciary duty, and corporate mismanagement and waste of assets.

The trial court dismissed all claims against the Trustees after determining that the Non-profit Corporation Act, incorporated into the Condominium Act by the Association's Declaration and Bylaws, immunizes the Association's trustees and officers from personal liability for acts other than those constituting intentional misconduct. Although the trial court granted Reedeker leave to amend his complaint to allege intentional misconduct, Reedeker chose instead to pursue this appeal.

## ISSUES AND STANDARD OF REVIEW

Reedeker argues on appeal that the trial court erred in dismissing his claims. Reedeker argues first that the trial court erred in deciding that failure to allege intentional misconduct, a tort-based standard of liability, defeated his contract claims. He argues second that the trial court erred in deciding that the standard of care found in the Nonprofit Corporation Act applies to nonprofit condominium corporations established under the Condominium Act; Reedeker asserts that, because the nature of condominium associations is so distinct from the nature of traditional nonprofit corporations, common law standards or those found in the Utah Revised Business Corporation Act, Utah Code Ann. §§ 16–10a–101 to –1705 (1995 & Supp.1997), should apply instead. Finally, Reedeker argues that the trial court inappropriately dismissed his claims of breach of fiduciary duty and mismanagement of funds where those claims were based on alleged ultra vires acts of the Trustees.

"Dismissal of a claim under Rule 12(b)(6) is a severe measure given the liberality of notice pleading, and must be granted only when it is apparent that under no set of facts proven in support of the claim as pleaded would a party be entitled to relief." *Olson v. Park–Craig–Olson, Inc.,* 815 P.2d 1356, 1360 (Utah Ct.App.1991) (citing *Colman v. Utah State Land Bd.,* 795 P.2d 622, 624 (Utah 1990)). We begin with the assumption "that the factual allegations made by the plaintiff are true." *Neel v. State,* 854 P.2d 581, 582 (Utah Ct.App.1993). "We then review the trial court's ruling to see whether the prevailing party was nevertheless entitled to dismissal as a matter of law." *Id.* "Because we consider only the legal sufficiency of the complaint, we grant the trial court's ruling no deference and review it for correctness." *Educators Mut. Ins. Ass'n v. Allied Property & Cas. Ins. Co.,* 890 P.2d 1029, 1030 (Utah 1995).

## ANALYSIS

### Contract Claims

Reedeker argues that the trial court erred when it dismissed his contract claims for failure to allege intentional misconduct. Reedeker explains that the same factual allegations which support a tort claim may also support a contract claim and that, in such cases, any deficiency in the tort claim has no effect on the sufficiency of the contract claim. Thus, even if the trial court was correct in requiring allegations of intentional misconduct to support Reedeker's tort-based claims, the trial court was not correct in dismissing his contract claims on the same ground.

The Trustees counter that dismissal of the contract claims was appropriate because there exists no enforceable contract under which the Trustees can be held personally liable. The Trustees challenge Reedeker's assertion that a contract exists between the individual Trustees and the Association because each owner, upon purchasing a condominium, enters into a contract with the Association to strictly comply with the Association's governing provisions. The Trustees argue that this contract between each individual owner and the Association does not bind the Trustees when acting in their distinct capacity as trustees.

■ Whether individual trustees and officers of a condominium association are personally liable in contract to either the condominium association or the owners *generally* is an issue of first impression in Utah. However, a review of traditional principles of

corporate liability, and the reference to these principles in the scant case law from other jurisdictions addressing this question, convinces us that such trustees are not personally liable in contract for their decisions while acting in that capacity unless those individuals enter into a distinct contract binding them personally.

Generally, unless there is a material dispute of fact, the existence of a contract is a conclusion of law. *See Wadsworth Const. v. City of St. George,* 865 P.2d 1373, 1375 (Utah Ct.App.1993), *aff'd,* 898 P.2d 1372 (Utah 1995). Here, the material facts are the identities of the parties, and these facts are undisputed. Reedeker and his co-plaintiffs are owners of Towers condominiums and members of the Association; however, when acting in their capacity as trustees, the Trustees are no longer acting as owners but rather are serving in the distinct capacity of agents for the Association. *See Baltimore & Ohio R.R. Co. v. Baugh,* 149 U.S. 368, 382, 13 S.Ct. 914, 919, 37 L.Ed. 772, 779 (1893) (stating "a corporation only acts through agents" and "directors are the managing agents"); *Davis v. Payne & Day, Inc.,* 10 Utah 2d 53, 348 P.2d 337, 339 (1960) ("Corporations can only act through agents, be they officers or employees."). The issue before us is whether the contract between each individual owner and the Association is enforceable against the Trustees when acting in that capacity.

" 'It is well established precedent that the bylaws of a corporation, together with the articles of incorporation, the statute under which it was incorporated, and the member's application, constitute a contract between the member and the corporation.' " *Turner v. Hi–Country Homeowners Ass'n,* 910 P.2d 1223, 1225 (Utah 1996) (quoting *Appeal of Two Crow Ranch, Inc.,* 159 Mont. 16, 494 P.2d 915, 919 (1972)). Failure of an owner to comply with the terms of the contract exposes that owner to contract liability. Similarly, "[b]ecause the Association is a corporation, it may not act in any way not authorized in its [declaration,] articles of incorporation or bylaws." *S & T Anchorage, Inc. v. Lewis,* 575 So.2d 696, 698 (Fla.Ct.App. 1991). As with the owner-member, failure of an association to abide by the terms of the contract exposes that association to contract liability.

However, a contract between a member and a corporation is not a contract between a member and those individuals who direct or manage the corporation. "The general rule is that a corporation is an entity separate and distinct from its officers, shareholders and directors and that they will not be held personally liable for the corporation's debts and obligations." *Melko v. Dionisio,* 219 Ill.App.3d 1048, 162 Ill.Dec. 623, 631, 580 N.E.2d 586, 594 (1991). Under this rule, "[a] director is not personally liable for his corporation's contractual breaches unless he assumed personal liability, acted in bad faith or committed a tort in connection with the performance of the contract." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1177 (2d Cir. 1993). This is true even where "the director, while acting in his official capacity, took actions that resulted in the breach." *Id.* at 1177. " 'In so immunizing corporate directors from personal liability the law has proceeded on the theory that in so acting they are but the agents of the corporation and that the breach is that of the corporation, and hence it alone is answerable therefore.' " *Maxey v. Citizens Nat'l Bank,* 507 S.W.2d 722, 726 (Texas 1974) (citation omitted).

We are unable to find any support for Reedeker's suggestion that this general rule is somehow inapplicable to trustees and officers of a condominium corporation. Indeed, a review of case law from other jurisdictions indicates a retention of general corporate liability principles within the condominium association context. *See, e.g., Frances T. v. Village Green Owners Ass'n,* 42 Cal.3d 490, 229 Cal.Rptr. 456, 469 n. 20, 723 P.2d 573, 586 n. 20 (1986) (noting only association is liable where plaintiff made no allegation that board members "entered into a contract with plaintiff on their own behalf or purported to bind themselves personally."); *Ocean Trail Unit Owners Ass'n v. Mead,* 650 So.2d 4, 7 (Fla.1994) (stating "if the officers or directors act in an unauthorized manner, the unit owners should seek a remedy through elections or, if factually supported, in an action for breach of fiduciary duty.").

In this case, Reedeker wishes to hold the Trustees contractually liable for the decisions they made as trustees. However, the only contract alleged in Reedeker's complaint is the one between each individual owner and the Association. Under that contract, each individual trustee or officer is liable, just like any other owner, for his or her obligations *as an owner.* That contract, however, *does not reach* the conduct of trustees or officers acting in their capacity as agents for the Association.

Because Reedeker does not allege the existence of a separate contract under which the Trustees have bound themselves personally for their actions as trustees, the trial court correctly dismissed Reedeker's contract claims.[4]

### Tort Claims

■ Reedeker next argues that the trial court erred in ruling that his failure to allege intentional misconduct defeated his tort claims of negligence, gross negligence, and breach of duty of care. Reedeker claims that the provision of the Nonprofit Corporation Act which requires intentional misconduct in order to hold trustees personally liable is inapplicable to the acts of nonprofit condominium association trustees.[5] Reedeker asserts that the nature of condominium associations, in particular the fact that such associations exercise considerable power over the private property of its members, requires that the acts of trustees be subject to a more strict standard of care such as is found in the Utah Revised Business Corporation Act, Utah Code Ann. §§ 16–10a–101 to –1705 (1995 & Supp.1997) (Business Corporation Act).[6]

The Trustees, in contrast, argue that because the Condominium Act does not identify the standard of care applicable to trustees, does not require condominium associations to incorporate as for-profit corporations, and expressly provides that it displaces other law only to the extent of conflict, the trial court properly determined that the standard of care found in the Nonprofit Corporation Act governs the personal liability of the Trustees of this nonprofit corporation.

The management of condominium associations in Utah is controlled by the Utah Condominium Ownership Act, Utah Code Ann. §§ 57–8–1 to –36 (1994 & Supp.1997). The issue is whether that Act allows for incorporation of the standard of care found within the Nonprofit Corporation Act or whether the Condominium Act instead requires application of a less rigorous standard, such as the one applied to for-profit corporations, as found in the Business Corporation Act.

■ Because this is a matter of pure statutory interpretation, we "review[ ] a trial court's ruling for correctness and give[ ] no deference to its legal conclusions." *Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 519 (Utah 1997). "When faced with a question of statutory construction, we look first to the plain language of the statute." *Id.* at 520. "[W]e assume that 'each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable.'" *Id.* (citation omitted). Finally, "'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another.'" *Brickyard Homeowners' Ass'n v.*

---

**4.** Before the trial court and on appeal, Reedeker argued that section 57–8–8 of the Condominium Act, which provides that "[each] unit owner shall comply strictly with the covenants, conditions and restrictions as set forth in the declaration ..., and with the bylaws," imposes a strict duty on the Trustees to so comply even when acting in that separate capacity. Because we believe that assertion is defeated by essentially the same analysis applicable to his contract claims, we do not address it separately.

**5.** Because Reedeker conceded at oral argument that he did not allege intentional misconduct, we

do not review the trial court's ruling on that issue.

**6.** Section 16–10a–840(4)(b) of the Business Corporation Act protects a corporate director or officer from personal liability for corporate decisions unless his or her breach or failure to perform the duties of the office "constitutes gross negligence, willful misconduct, or intentional infliction of harm on the corporation or the shareholders." Utah Code Ann. § 16–10a–840(4)(b) (1995).

*Gibbons Realty Co.*, 668 P.2d 535, 538 (Utah 1983) (citation omitted).

The Utah legislature enacted the Condominium Act in 1963.[7] The Act applies "to property which ... all the owners submit to the provisions of the act by duly executing and recording a declaration as provided in the act." Utah Code Ann. § 57–8–2. To be subject to the Condominium Act, condominium associations must prepare and record both a declaration "contain[ing] the covenants, conditions, and restrictions relating to the project," *id.* § 57–8–10(1), and bylaws, which govern "administration of every property," *id.* § 57–8–15.

The Condominium Act provides significant guidance as to the operation of condominium associations. *See, e.g., id.* § 57–8–16 (stating bylaws may provide for "the establishment of a management committee [and] ... the powers and duties of the management committee"); *id.* § 57–8–7(5) (stating "necessary work of maintenance, repair and replacement of the common areas and facilities ... shall be carried out only as provided in this act or in the declaration or bylaws"); *id.* § 57–8–8 (stating "[e]ach unit owner shall comply strictly with the covenants, conditions and restrictions as set forth in the declaration ..., and with the bylaws"); *id.* § 57–8–33 (stating "actions may be brought by the manager or management committee, in either case in the discretion of the management committee, on behalf of two or more of the unit owners, as their respective interest may appear, with respect to any cause of action relating to the common areas and facilities or more than one unit.").

Despite these numerous provisions addressing the management of condominium associations, the Condominium Act contains no provision defining the personal liability of condominium association trustees. It also contains no provision requiring condominium associations to incorporate as for-profit corporations, nor any provision prohibiting them from doing so. Consistent with this absence, section 57–8–35(1) of the Condominium Act provides: "The provisions of this chapter shall be in addition and supplemental to all other provisions of law, statutory or judicially declared, provided that wherever the application of the provisions of this chapter conflict with the application of such other provisions, this chapter shall prevail." *Id.* § 57–8–35(1).

Like the Condominium Act, the current Nonprofit Corporation and Co–Operative Association Act was enacted in 1963.[8] It applies to "all corporations organized under this chapter." Utah Code Ann. § 16–6–20(1)(a). Any corporation "whose object is not pecuniary profit may be organized under [the act] for any lawful purpose or purposes...." *Id.* § 16–6–21(1). Although the 1963 enactment did not include a provision addressing trustee liability, the Utah legislature added such a provision in 1987.[9] That provision provides:

(1) A trustee or officer of a nonprofit corporation is not personally liable to the corporation or its members for civil claims arising from acts or omissions made in the performance of his duties as a trustee or officer, unless the acts or omissions are the result of his *intentional misconduct.*

*Id.* § 16–6–107(1) (emphasis added). The primary purpose of the amendment was to encourage competent persons to serve as trustees in nonprofit corporations by limiting their personal liability for decisions made while serving in those capacities.[10]

The American Towers Declaration was prepared and recorded so as to subject the condominiums to the Condominium Act. The American Towers Condominium Association was then incorporated as a nonprofit corporation and its Bylaws provide that the Association shall be subject to the Nonprofit Cor-

---

7. *See* Condominium Ownership Act, ch. 111, §§ 1–37, 1963 Utah Laws 406, 406–18.

8. *See* Utah Non–Profit Corporation Cooperative Association Act, ch. 17, §§ 1–97, 1963 Utah Laws 27, 27–61.

9. *See* Liability Limits of Corporate Directors, ch. 166, § 2, 1987 Utah Laws 1005, 1006.

10. *See* Recording of Utah House Floor Debates, 47th Legislature, Regular Session (Feb. 23–24, 1987)(discussing Senate Bill 47); Recording of Utah Senate Floor Debates, 47th Legislature, Regular Session (Feb. 2–4, 1987) (same).

poration Act. We are now asked to decide whether, under these circumstances, the Condominium Act, which constitutes the controlling statute but contains no provision addressing the personal liability of condominium association trustees, allows, under section 57–8–35(1), application of the liability provision of section 16–6–107(1) of the Nonprofit Corporation Act to the trustees of nonprofit condominium associations.

Reedeker argues that the Condominium Act governs all his tort claims to the exclusion of any provisions within the Nonprofit Corporation Act. He further asserts that the primary purpose of the Condominium Act is to define and protect the rights of individual owners. Reedeker claims this purpose, which is reflected in the Condominium Act's numerous provisions dictating how condominium developments should be governed, is inconsistent with the liability standard found in the Nonprofit Corporation Act, which holds trustees liable only for intentional misconduct. Reedeker explains that a condominium association board is "different in scope, nature, purpose and protections from traditional nonprofit organizations." Thus, he claims, although "[t]he intentional misconduct makes sense for [trustees] of traditional nonprofit organizations, because the [trustees'] decisions cannot affect other members' property," that standard makes no sense where the acts of condominium trustees directly affect the property rights of other members. Reedeker concludes that, because condominium associations have responsibilities more similar to for-profit corporations, the liability standards contained within the Nonprofit Corporation Act are inapplicable.

While Reedeker's arguments on this issue have some measure of plausibility, our ability to entertain them is nonetheless constrained by the rules of statutory construction. Applying these rules, we conclude that the language of section 57–8–35(1) of the Condominium Act is clear and unambiguous. The provisions of that Act "shall be *in addition and supplemental to* all other provisions of law." Utah Code Ann. § 57–8–35(1) (emphasis added). The only exception is where "the application of the provisions of this [Act] conflict with the application of such other provisions." *Id.* In that case, the Condominium Act "shall prevail." *Id.* Thus, the Condominium Act specifically allows for application of other law within the condominium context.

That the Condominium Act contains provisions designed to protect the interests of owners and lenders in condominium projects cannot nullify the clear intention expressed in section 57–8–35(1) that other provisions of law govern where the Condominium Act is silent. Furthermore, the Legislature's decision to not include a liability provision within the Condominium Act, in combination with its enactment of section 57–8–35(1), undermines Reedeker's suggestion that the Legislature intended protection of property rights to be the Act's predominant purpose. *See Business Aviation of S. Dakota, Inc. v. Medivest, Inc.*, 882 P.2d 662, 665 (Utah 1994) ("Because the statute does not indicate that the *sole* purpose of the Act is to protect corporations from outside hostile takeovers, we reject defendants' argument."). "Our '"interpretation [of a challenged statute] must be based on the language used, and ... the court has no power to rewrite a statute to make it conform to an intention not expressed."'" *Id.* (citations omitted).

Similarly, differences between the Condominium Act and the Nonprofit Corporation Act cannot be dispositive. As provided in section 57–8–35(1), where conflict exists between the two Acts' provisions, those in the Condominium Act prevail. Reedeker argues, however, that a conflict between the Condominium Act and the Nonprofit Corporation Act as to particular provisions creates a conflict between those Acts as a whole. That interpretation is not only contrary to the plain language of section 57–8–35(1), which addresses conflicting "provisions" rather than conflicting statutes as a whole, but is also contrary to that rule of statutory construction that requires a statute to "'be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another.'" *Brickyard Homeowners' Ass'n*, 668 P.2d at 538. For us to interpret section 57–8–35(1) to preclude application of any provision of a

broadly applicable statutory scheme, such as the Nonprofit Corporation Act, merely because some provisions of the two Acts conflict, would make the "supplemental" clause of section 57–8–35(1) "inoperative or superfluous, void or insignificant." *Id.* This is especially so where the Condominium Act itself does not address the particular issue in question.

■ Finally, the fact that section 16–6–107(1) of the Nonprofit Corporation Act was enacted subsequent to the Condominium Act does not alter our conclusion. We assume

"that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter, wherefore it is held that in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they all should be construed together."

*Murray City v. Hall,* 663 P.2d 1314, 1318 (Utah 1983) (citation omitted).

■ Where legislation is clear, we must "refuse to consider public policy arguments or otherwise attempt to assess the wisdom of the legislation. Our duty is to implement the law as it reads unless it results in an absurd outcome." *Stephens,* 935 P.2d at 522 (citation omitted); *see also State ex rel. A.B.,* 936 P.2d 1091, 1097 (Utah Ct.App.1997); *Bonneville Int'l Corp. v. State Tax Comm'n,* 858 P.2d 1045, 1048 (Utah Ct.App.1993). "[I]t is not our prerogative to rewrite [a] section or to question the wisdom, social desirability, or public policy underlying it." *Salt Lake Child & Family Therapy Clinic v. Frederick,* 890 P.2d 1017, 1021 (Utah 1995). "[I]f a statute is infirm, 'amendments to correct the inequities should be made by the legislature and not by judicial interpretation.'" *Id.* at 1021 (citation omitted).

Because the Condominium Act does not contain any provision addressing the personal liability of trustees and specifically provides for the application of other non-conflicting law, we hold that the trustees of a condominium association incorporated as a nonprofit corporation under the Nonprofit Corporation Act are, pursuant to section 57–8–35(1) of the Condominium Act, subject to the liability provision contained within the Nonprofit Corporation Act. Because section 16–6–107(1) of the Nonprofit Corporation Act immunizes trustees from personal liability absent intentional misconduct, and because Reedeker failed to allege such misconduct, the trial court properly dismissed Reedeker's tort-based claims.

### *Corporate Law Claims*

Finally, Reedeker challenges the trial court's dismissal of his breach of fiduciary duty and mismanagement and waste of corporate assets claims. Reedeker argues the trial court erred in deciding that these claims are subject to the intentional misconduct standard of liability found in section 16–6–107(1) of the Nonprofit Corporation Act. He argues first that these corporate claims are distinct from tort claims and thus are not subject to section 16–6–107(1). Alternatively, Reedeker seems to argue that, because his corporate claims rest upon ultra vires acts, section 16–6–107(1) is inapplicable because claims alleging ultra vires acts are actionable regardless of the trustees' intent.

The Trustees counter that because Reedeker's claims essentially assert a breach of the Trustees' duty of care to the Association, the trial court correctly decided such claims are subject to section 16–6–107 of the Nonprofit Corporation Act. To the extent Reedeker attempts to convert these claims to claims asserting ultra vires acts, the Trustees respond that Reedeker has failed to make the necessary allegations.

1. Application of Section 16–6–107(1) to Corporate Law-based Claims

■ Having previously decided that section 16–6–107(1) applies to tort-based actions against nonprofit condominium association trustees, we must now decide whether that section also applies to claims against trustees based on their duties under corporate law. An analysis of the plain language of section 16–6–107(1) indicates that the section applies equally to such claims.

Section 16–6–107(1) prohibits the personal liability of a nonprofit corporation trustee "for civil claims arising from acts or omis-

sions made in the performance of his *duties* as a trustee or officer, unless the acts or omissions are the result of his intentional misconduct." Utah Code Ann. § 16–6–107(1) (emphasis added). The plain language of the section in no way distinguishes between the trustees' duties as defined under traditional corporate law and those duties more traditionally associated with tort law. Nor does the section make any distinction based on the nature of the duty—whether the fiduciary duty of care or the duties to manage a corporation competently and to not waste corporate assets, if such duties are distinct from the individual's fiduciary duty.[11]

Thus, the plain language of section 16–6–107 requires application of the intentional misconduct standard to any breach of duty by a trustee to a nonprofit corporation. This conclusion finds further support in Utah case law recognizing that a corporate mismanagement claim may be subject to a tort standard of liability. In *FMA Acceptance Co. v. Leatherby Ins. Co.*, 594 P.2d 1332 (Utah 1979), the Utah Supreme Court discussed the nature of a claim of negligent mismanagement of a corporation. Focusing on the then-applicable duty of care owed to a corporation by its directors and trustees, the court stated:

> The rule most in harmony with the character and well-being of such an institution appears to be that the directors, in administering its affairs, must exercise ordinary care, skill, and diligence. Under this rule, it is necessary for them to give the business[ ] under their care such attention as an ordinarily discreet business man would give to his own concerns under similar circumstances.... If, however, directors, acting in good faith, and with reasonable care, skill, and diligence, nevertheless fall into a mistake, either of law or fact, they will not be liable for the consequences of such mistake.

*Id.* at 1334 (citation omitted) (emphasis omitted); *see also Equitable Life & Cas. Ins. Co. v. Inland Printing Co.*, 26 Utah 2d 19, 484 P.2d 162, 163 (1971) (describing "law relative

to mismanagement by, and negligence on the part of, officers and directors of a corporation" as involving a "legal relationship which would raise a *duty*, on the part of directors or officers ... *to exercise care* in the management of the affairs of the corporation." (Emphasis added)); *Resolution Trust Corp. v. Hess*, 820 F.Supp. 1359, 1364–65 (D.Utah 1993) (interpreting *FMA Acceptance* as holding that director liability in claim for "negligent mismanagement" is determined by "applicable standard of director liability" in tort).

In light of the plain language of section 16–6–107(1), which by its terms applies to all duties of nonprofit corporation trustees, and case law defining corporate mismanagement as a breach of a trustee's duty of care, we hold that section 16–6–107(1) applies to Reedeker's breach of fiduciary duty and mismanagement claims. Because Reedeker did not allege intentional misconduct in connection with these claims, we affirm the trial court's dismissal of them.

### 2. Ultra Vires Acts

■■■■ Reedeker attempts to avoid this result by asserting that his corporate claims are not subject to section 16–6–107(1) because the claims are based on ultra vires acts—acts which a corporation lacks capacity to undertake regardless of the Trustees' intent.

The Trustees argue that Reedeker fails to allege ultra vires acts where Reedeker does not challenge the Trustees' authority to institute suit against CCI but merely disagrees with the manner chosen to finance that suit. The Trustees assert that where neither the Declaration nor the Bylaws contain a provision specifically prohibiting the Association from financing the suit out of the Reserve Fund and where the Trustees relied on the opinions of an attorney and accountant that the Reserve Fund could be used in this manner, the Trustees' action is, as a matter of law, not ultra vires. Alternatively, the Trust-

---

**11.** The Trustees argue that both Reedeker's breach of fiduciary duty and his mismanagement and waste claims do not exist as independent claims because mismanagement and waste merely identify ways in which a trustee may breach his or her fiduciary duty. Because of our disposition of Reedeker's corporate claims, we need not decide this issue.

ees argue that, even if funding the CCI Litigation from the Reserve Fund was inappropriate, section 16–6–107 of the Nonprofit Corporations Act still required Reedeker to allege intentional misconduct before the Trustees could be held personally liable.

We have previously determined that, under the Condominium Act and the Towers Declaration and Bylaws, section 16–6–107 of the Nonprofit Corporations Act defines the standard of care which the Trustees must breach before they can be held personally liable for their decisions as trustees. That section provides:

> (1) A trustee or officer of a nonprofit corporation is not personally liable to the corporation or its members for civil claims arising from acts or omissions made in the performance of his duties as a trustee or officer, unless the acts or omissions are the result of his intentional misconduct.

Utah Code Ann. § 16–6–107(1).

Because the Condominium Act is silent on liability in connection with ultra vires acts of a condominium association, we must now consider the effect of section 16–6–107 on another provision of the Nonprofit Corporations Act, section 16–6–23, which does allude to such trustee liability.[12]  In proceeding, we reiterate that a statute is to " 'be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another.' "  *Brickyard Homeowners' Ass'n*, 668 P.2d at 538 (citation omitted).

Section 16–6–23  of the Nonprofit Corporations Act provides:

> No act of nonprofit corporation ... shall be invalid by reason of the fact that the corporation was without capacity or power to do such act ..., but such lack of capacity or power may be asserted:
>
> (1) In a proceeding by a member or a trustee against the corporation to enjoin the doing or continuation of unauthorized acts
>
> ....

(2) In a proceeding by the corporation, whether acting directly ... or through members in a representative suit against the incumbent or former officers or trustees of the corporation for exceeding their authority.

Utah Code Ann. § 16–6–23.

▮  The primary purpose of section 16–6–23, as evidenced by the section's plain language, is to eliminate a corporation's ability to avoid its obligations to third parties by raising a defense of ultra vires.  *See also Park v. Alta Ditch & Canal Co.*, 23 Utah 2d 86, 91, 458 P.2d 625, 628 (1969) ("This provision was undoubtedly designed to place some limitations on the defense of ultra vires.").

In limiting ultra vires as a defense, the section makes clear that claims alleging corporate ultra vires acts may still be maintained against the corporation itself or against individual trustees who have exceeded their authority.  Such actions would most likely be for declaratory or injunctive relief, not damages.  However, nothing in section 16–6–23 exempts the latter claims from the intentional misconduct standard for personal liability contained in section 16–6–107.  Furthermore, application of section 16–6–107 to the claim recognized in section 16–6–23 does not destroy or undermine the primary purpose of section 16–6–23 or make that section inoperative or superfluous.  As indicated above, the main objective of section 16–6–23 is to eliminate a corporation's ultra vires defense.  That purpose is not defeated by applying the standard of care defined in section 16–6–107 to the types of actions recognized under section 16–6–23 as available against individual trustees.

Exempting such actions from the reach of section 16–6–107, however, would destroy—or at least greatly diminish—the primary objective behind section 16–6–107.  As noted above, section 16–6–107 was enacted to encourage competent persons to serve as nonprofit corporation officers or trustees by decreasing their exposure to personal liability for their management decisions.[13]  To accom-

---

**12.**  Section 16–6–23 is applicable to the Association and its trustees for the same reasons for which we previously found 16–6–107 applicable. We therefore do not repeat that analysis.

**13.**  *See* Recording of Utah House Floor Debates,

plish this objective, section 16–6–107 gives the trustees blanket protection from personal liability for any acts amounting to less than intentional misconduct.

■ " 'Unambiguous language in the statute may not be interpreted to contradict its plain meaning.' " *Salt Lake Child & Family Therapy Clinic,* 890 P.2d at 1020 (citation omitted) (alteration omitted). "When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction." *Id.* (citations omitted). Section 16–6–107 contains no exception and thus, on its face, applies universally to all claims alleging any type of breach of duty against nonprofit corporation trustees and seeking damages to be recovered from those trustees.

Because the language of section 16–6–107 is clear in its intent to apply to all breach of duty actions brought against nonprofit corporation trustees and because the application of section 16–6–107 to those causes of action recognized under section 16–6–23 does not defeat the purpose of section 16–6–23, we hold that a plaintiff must allege intentional misconduct against a nonprofit corporation trustee—even where alleging that the trustee has exceeded his or her authority—in order to survive a Rule 12(b)(6) motion. Because Reedeker concedes that he has not alleged intentional misconduct in connection with his claims against the Trustees, we hold that,

even if Reedeker's claims were founded on ultra vires corporate acts, the trial court correctly dismissed those claims.

## CONCLUSION

We conclude that the trial court's dismissal of Reedeker's contract claims was proper where Reedeker failed to allege a contract which is enforceable against the Trustees when acting in that capacity. We further conclude that, where a condominium association is incorporated under the Utah Nonprofit Corporation and Co-operative Association Act, trustees and officers of such association may be held personally liable for performance of their duties only if their performance reflects intentional misconduct, as required under section 16–6–107 of that Act. Because Reedeker failed to allege intentional misconduct in connection with any of his remaining claims, the trial court correctly dismissed those claims.[14]

We thus affirm the trial court's judgment.

BILLINGS and ORME, JJ., concur.

---

47th Legislature, Regular Session (Feb. 23–24, 1987)(discussing Senate Bill 47); Recording of Utah Senate Floor Debates, 47th Legislature, Regular Session (Feb. 2–4, 1987) (same).

**14.** On appeal, Reedeker also argued that the trial court had improperly considered unalleged fact scenarios in dismissing Reedeker's complaint and that Reedeker was entitled to attorney fees and an incentive fee where pursuit of this action brought a benefit to the Association. Because of our disposition of this case, we need not address these issues.