643 F.Supp. 561 (1986)
NATIONAL DEVELOPMENT CO., INC., Plaintiff,
v.
TRUSTEESHIP OF WOODLAND LAKES, et al., Defendants.
No. 86-852C(1).
United States District Court, E.D. Missouri, E.D.
September 16, 1986.
Joseph H. Mueller, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, Mo., for plaintiff.
Norman Stricker, Potosi, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
Plaintiff moves this Court to make permanent the temporary order restraining defendants from collecting assessments from new lot purchasers and from enforcing certain amendments to the Woodland Lakes Trust Indenture. Plaintiff also seeks a declaratory judgment that certain amendments to the trust indenture are invalid. This case was tried to this Court sitting *562 without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 52.

FINDINGS OF FACT
1. Plaintiff, National Development Co., Inc. (NDC) is a Texas corporation having its principal place of business in Texas.
2. Defendant, Trusteeship of Woodland Lakes, is a legal entity established in accordance with an Amended Trust Indenture and Restrictive Covenants and Conditions Pertaining to a Subdivision of Land in Washington County, Missouri (Trust Indenture).
3. Defendants James R. Clutter, Wilbert Meyer and William W. King serve as Trustees of Woodland Lakes, reside in Washington County, Missouri, and own lots at the Woodland Lake development.
4. NDC is the developer of Woodland Lakes, a subdivision in Washington County, Missouri. Woodland Lakes comprises 2700 acres, 400 to 500 acres of which remain undeveloped. On the developed property, NDC has platted 5400 lots. NDC offers to sell lots outright or under a standard installment contract. Purchasers under an installment contract do not receive a deed for their lot until all payments have been made. Those customers who purchase outright receive a deed upon payment. NDC has transferred deeds on approximately 25% of the platted lots. NDC retains the deeds for the remaining 75% of the platted lots, which includes lots sold under an installment contract and unsold platted lots.[1]
5. On or about May 20, 1980, the Woodland Lakes Trust Indenture was signed and recorded. On April 11, 1983, this Trust Indenture was amended, and the amendments were duly recorded. All lots at Woodland Lakes are subject to the covenants contained in the Trust Indenture.
6. From the inception of the Trusteeship until April, 1985, Richard L. Erkenbeck served as the sole Trustee. During this period, Erkenbeck was a Vice President of NDC and the NDC employee with primary responsibility for the Woodland Lakes development.
7. On April 9, 1985, the annual Woodland Lakes property owners meeting was held as required by the Trust Indenture. At this meeting, the present Trustees were elected to replace Erkenbeck, whose term had expired under the terms of the Trust Indenture.
8. Under the Trust Indenture in effect prior to April 9, 1985, lot owners were entitled to one vote for each lot when electing trustees. The Trust Indenture defined a lot owner as one to whom a duly recorded warranty deed had been conveyed. After the election of Trustees on April 9, 1985, a motion was made and seconded to allow any property owner, whether by warranty deed, fee simple title, or purchasing under contract for deed, to vote for any purpose provided for in the Trust Indenture if that property owner had paid all assessments owed to the Trusteeship. The motion was amended to provide also that the Trust Indenture could be amended by a vote of 51% of the property owners present at a property owner's meeting. Only deed holders voted on this motion. Erkenbeck voted as proxy for NDC. The motion passed unanimously. Both amendments are set out below.[2] On September 4, 1985, the *563 amendments passed on April 9, 1985, were recorded.
9. On August 24, 1985, a special property owner's meeting was held. At the meeting, two additional amendments to the Trust Indenture were passed. These amendments are set out in the margin.[3] These amendments were also recorded on September 4, 1985.
10. On April 12, 1986, a third property owner's meeting was held and additional amendments to the Indenture were passed. These amendments are set out in the margin.[4]

CONCLUSIONS OF LAW
This Court has jurisdiction over this cause under 28 U.S.C. §§ 1332, 2201, and 2202. Though Missouri law applies to this action, this Court has found no Missouri cases addressing the issues presented. Accordingly, this Court resorts to those common law principles which it believes a Missouri court would apply. Kifer v. Liberty Mutual Insurance Co., 777 F.2d 1325 (8th Cir.1985).
Regarding plaintiff's request for a declaration of rights, the primary issue for decision is whether or not the April 9, 1985 amendments to the Trust Indenture are enforceable. Because these first amendments changed voting rights, they affect the validity of subsequent amendments.
Generally, meetings of a corporation or association should be conducted in compliance with the constitution and bylaws. Only votes taken in compliance with these rules can effect binding actions. See 7 C.J.S. Associations § 7 (1980). Here, the Woodland Lakes Trust Indenture provides that any action relevant to the subdivision may be taken at annual or special meetings. Prior to the April 9 meeting, the Indenture provided for amendments by a vote of 51% of all deed holders. Defendants argue that the voting rights provisions of the Trust Indenture were amended to permit both deeded owners and purchasers under contract for deed to vote. Plaintiff concedes that voting rights changed at the April 9 meeting but contends that the change allowed purchasers under contract to vote only in the election of Trustees at the April 9 meeting. As plaintiff contends, Erkenbeck allowed purchasers under contract to vote solely for the new trustees. According to Erkenbeck, many more purchasers under contract than deed holders were present at the meeting. He believed it would be fair to allow them to vote on the new trustees. This version of the meeting is supported by the testimony of Erkenbeck's former secretary, Karen Lancaster. The testimony of Erkenbeck and his secretary conflicts with the testimony of Elaine Meyers, Jim Clutter, Donald Busch and Alma Brown, lot owners at Woodland Lakes. The lot owners testified that a motion to amend the trust indenture *564 to permit purchasers under contract to vote was made, seconded, and unanimously passed. The lot owners testified that the amendment was not limited to allowing purchasers under contract to vote only in the election of trustees.
Poor recordkeeping and informal procedure precipitated this lawsuit. The parties cannot agree on the events of the April 9 meeting because they did not conduct themselves with proper regard for the consequences of their actions. Amendments were passed but not reduced to writing. Votes were taken but tallies were not kept. The best notes of the meeting are scant, the official minutes wholly inadequate. Thus, the Court must rest its decision on the testimony of the witnesses at trial. This Court credits the testimony of the lot owners and concludes that the Trust Indenture was duly amended at the April 9 meeting to grant purchasers under contract the same voting rights as deed holders.
At the time of the April 9, 1985 meeting, plaintiff held deeds for the unsold platted lots and the platted lots under contract for deed. Therefore, plaintiff essentially controlled the trusteeship. The April 9 amendment transferred the votes from NDC to purchasers under contract, leaving NDC with votes only for unsold platted lots. Thus, after the amendment NDC controlled less than a majority of the votes. Plaintiff contends that it could not have intended to give up control of the trusteeship because this action would make it more difficult for NDC to comply with HUD regulations. The Court finds this argument unavailing. First, the intent of plaintiff is not at issue. On the facts as found by this Court, plaintiff relinquished control whether or not Erkenbeck understood all the ramifications of his actions.[5] Second, the regulation cited by plaintiff, 24 C.F.R. § 1710.12, does not require the developer to maintain control. The cited regulation exempts from federal regulation developers who, inter alia, sell their lots free and clear of all liens, encumbrances, and adverse claims. Subsection 4(v) of the regulation allows the developer to remain exempt if the only restrictions are beneficial, mutually enforceable, property restrictions, particularly those restrictions which establish property owners' associations. This subsection requires the developer to transfer control of the property association to the lot owners no later than when the developer ceases to own a majority of the lots. Thus, the regulation anticipates cases in which the developer turns over control at an earlier time. The April 9 amendments are consistent with this regulation. Consequently, the existence of the regulation does not bear upon the likelihood that Erkenbeck allowed NDC to lose control of the trusteeship. Therefore, this Court declares the amendments passed at the April 9, 1985 meeting valid and enforceable. Plaintiff's prayer for a permanent injunction against enforcement of these amendments is dismissed.
Next, the Court turns its consideration to the amendments voted upon at the August 28 and April 12 meetings. Plaintiff contends that these amendments are invalid because a quorum was not present at the meetings. Defendants assert that a quorum was present because one of the April 9 amendments changed the quorum requirement.
Prior to the April 9 meeting, the trust indenture contained two paragraphs pertaining to the number of votes necessary for action. Article I, paragraph 3, of the Trust Indenture provided that "[a]ny business relevant or pertinent to the affairs of the WOODLAND LAKES property, or subdivision thereof, may and shall be transacted at any annual or special meeting described above. A majority of the lot owners shall constitute a quorum at the respective meeting of each." Article VI, paragraph *565 2, of the Trust Indenture provided that "[f]rom and after the termination of the term of the original Trustee as prescribed in Article I this indenture may be modified or amended by a vote of the owners of not less than fifty-one percent (51%) of the lots into which this tract may be subdivided." One of the April 9 amendments provides that "[t]his indenture may be modified or amended by a fifty-one percent (51%) vote of the property owners present at a duly called and scheduled meeting of the association." As recorded, the April 9 amendments appear as Article VII of the Trust Indenture. The amendments do not specify which portions of the original Trust Indenture they modify, nor did the participants at the April 9 meeting specify the portion of the trust indenture they intended to modify. Defendants argue that the above amendment altered the quorum requirement of Article I. Plaintiff contends that this amendment altered the rules for amending the Indenture in Article VI, not quorum requirement in Article I.
This Court concludes that the April 9 amendment did not change the quorum requirement. As in the case of an unambiguous contract, the Court here must construe the trust indenture so as to give its words their ordinary meaning. However, the Court must also look to the entire contract and consider its object and purpose. See Wilshire Construction Co. v. Union Electric Co., 463 S.W.2d 903, 906 (Mo. 1971). Where the agreement is clear, the Court may not rewrite it to conform what one of the parties may have thought the agreement ought to be. See Sternbeck v. Equitable Life Insurance Co. of Iowa, 237 F.2d 626, 629 (8th Cir.1956). The amendment passed on April 9 is not ambiguous. The language of the amendments refers clearly to modification and amendment of the indenture, rather than to the votes necessary for action at a lot owners meetings. Moreover, this construction is consistent with the reasonable operation of the trusteeship. Prior to April 9, a majority of all lot owners was required for valid action at annual or special meetings. At such a meeting, most actions could be taken by a simple majority vote of those present at the meeting. Thus, most actions could be passed at minimum by a vote of just over one quarter of the lot owners. However, the more solemn act of amending the Trust Indenture required the vote of 51% of all lot owners. Thus, the Trust Indenture could not be amended by less than just over one-half of the lot owners. Under plaintiffs' construction, the April 9 amendment eliminates the higher majority required to amend the indenture, a not unreasonable result. The Court also notes that on April 12, 1986, the defendants purportedly amended Article I, paragraph 3 to define a quorum as 100% of the lot owners present at a meeting. If it were valid, this amendment would accomplish clearly the result which the April 9, 1985 amendment reaches only by defendants' strained construction. Certainly, defendants could have changed the quorum requirement on April 9 and may have intended to do so, but the plain language of the amendment indicates otherwise. Thus, the presence of a majority of the lot owners was required for valid action at the August 28, 1985 and April 12, 1986 meetings. Defendants concede that a quorum was not present at these meetings. Therefore, the amendments passed at these meetings are declared unenforceable, and this Court permanently enjoins defendants from enforcing these amendments against NDC.
Having declared the validity of certain amendments to the Trust Indenture, the Court must next consider the issue of assessments. As plaintiff asserts in its post-trial brief, the Court must determine the amount of assessments owed by NDC to the trusteeship. This issue was not raised by the pleadings nor was evidence regarding the amount of assessments adduced at trial. Therefore, the issue is not properly before the Court. Alternatively, plaintiff seeks the appointment of a special master under Fed.R.Civ.P. 53(a). Though the parties *566 consent to the use of a master, their request is denied. See Bartlett-Collins Co. v. Surinam Navigation Co., 381 F.2d 546, 550-51 (10th Cir.1967) (appointment of master denied though parties consented). Plaintiff may raise the issue in an appropriately pleaded and filed lawsuit.
The Court must also consider whether to continue the temporary restraining order granted by this Court and extended by consent of the parties. Though voluntary cessation of a challenged practice does not necessarily moot a case, such abandonment is an important factor bearing on whether the Court should exercise its power. City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289, 102 S.Ct. 1070, 1074-75, 71 L.Ed.2d 152 (1982). Apparently, the parties have reached agreement on the time for collecting the annual assessments, and the trustees have ceased the alleged harassment of new lot owners. Thus, while the issues concerning the temporary restraining order are not moot, it appears that further injurious actions are unlikely. Moreover, no evidence on this issue was presented at trial. Accordingly, this Court's temporary restraining order is dissolved, and plaintiff's prayer for permanent injunctive relief is dismissed.
Finally, the Court adds a note regarding the parties and their positions. Though NDC continues to have a substantial investment in the Woodland Lakes development, it has lost control of the development's trusteeship. Naturally, NDC refuses to invest additional money in the development. The trustees and lot owners have gained control of the trusteeship but have won a Pyrrhic victory: Without NDC funds, the trusteeship has run out of money and faces imminent bankruptcy. The resulting stalemate cannot be solved merely by the memorandum of this Court. The parties are admonished to recognize their mutual interests in the success of the development and to cooperate toward that end.
NOTES
[1] Unless otherwise specified, this opinion will refer to both deeded owners and purchasers under contract as lot owners.
[2] 1. This indenture may be modified or amended by a fifty-one percent (51%) vote of the property owners present at a duly called and scheduled meeting of the Association.

2. Any person shall be considered as an owner entitled to vote for any purpose provided for in this indenture provided said person is the owner by fee simple title, warranty deed or purchaser of the property under contract for deed; and provided that said person shall have fully paid all assessments which may be lawfully made by or under authority of this indenture.
[3] 1. There shall be semi annual meetings of the lot owners at a convenient place in Washington County, Missouri, for the transaction of such business as may properly come before said meeting, on the second Saturday in April and the first Saturday of October, beginning in the year 1986 and each year thereafter. If however, the second Saturday of April precedes Easter Sunday then the April meeting shall be held on the third Saturday of April. Notice of the date, time and place of said meeting shall be given by insertion of a notice in the newspaper circulated in Washington County, Missouri, at least seven (7) days before the date of the meeting, or, at the election of the Trustees, notice of said meeting may be made by mailing to each lot owner a letter setting forth the date, time and place of said semi annual meeting. Special meetings of lot owners shall be subject to these same notice requirements.

2. A special assessment of Twenty Dollars ($20.00) per year beginning in 1986 and continuing for a maximum term of ten years upon and against each property owner for the purpose of obtaining electrical transmission and distribution lines to each and every lot within the Woodland Lakes Development.
[4] 1. One hundred (100) percent of the lot owners present and voting shall constitute a quorum at the respective meeting of each.

2. In any election of Trustees, the owner of each lot shall be entitled to one (1) vote for each full lot owned by him, not to exceed a total of five (5) votes per any one owner, which vote may be cast in person or by proxy, however, no person or entity in attendance shall vote more than five (5) such proxies.
[5] Plaintiff has not raised the issue of whether Erkenbeck, as an agent of NDC, acted beyond the scope of his authority. The Court must therefore assume that Erkenbeckas the vice-president of NDC, the officer with primary responsibility for Woodland Lakes, and the individual authorized to vote NDC's proxy votes acted within his authority.