2000 Utah Ct. App. 103

**Jean LEVANGER and Rebecca Levanger,
Plaintiffs and Appellants,**

v.

**Joann VINCENT, Ken Fisher, Diane
Duplanty, Ron Duplanty, et al.,
Defendants and Appellees.**

No. 990301–CA.

Court of Appeals of Utah.

April 13, 2000.

E. Jay Sheen, Robinson & Sheen LLC, Salt Lake City, for Appellants.

Paul M. Belnap and H. Burt Ringwood, Strong & Hanni, Salt Lake City, for Appellees.

Before JACKSON, Associate P.J., and BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiffs, homeowners in the Highland Estates subdivision and members of the Highland Estates Property Owners Association (Association), brought this action against the members of the Association's board of trustees (Trustees). Plaintiffs sought to have the trial court set aside certain changes to the covenants, conditions, and restrictions (CC & Rs) that the Association recorded in 1995 and that amended and replaced previously filed CC & Rs. The trial court granted summary judgment for the Trustees and Plaintiffs appeal. We reverse.

## FACTS

¶ 2 The original CC & Rs for the Highland Estates subdivision were filed on July 6, 1964, in Summit County, Utah, and amended CC & Rs were filed on March 14, 1972 (the 1972 CC & Rs). The Association was incorporated under the Utah Nonprofit Corporation Act in October of 1972.

¶ 3 In 1993, the Trustees of the Association determined that the 1972 CC & Rs required updating and revision. The Trustees had their counsel draft a new set of revised CC & Rs, which were presented to the members attending the Association's June 1994 annual meeting.

¶ 4 Although all of the approximately forty homeowners in attendance at the meeting voted in favor of the new CC & Rs, the Trustees could not obtain the required vote of the owners of a majority of the subdivision lots at the meeting. The Trustees decided that a mail-in ballot would be the best way to notify the homeowners in the subdivision and maximize participation in the election.

¶ 5 In August 1994, the Association's attorney prepared a letter addressed to each member of the Association that contained a copy of the proposed amended CC & Rs and a ballot. The letter stated, "the voting period expires November 30, 1994; ballots must be returned by that date." However, the Trustees had not received all of the ballots by that date and therefore extended the voting period. The Association's January 1995 newsletter informed the homeowners that the voting period had been extended, and encouraged everybody to mail in a ballot.

¶ 6 The Association held its next annual meeting on September 25, 1995, when it was announced that the amended CC & Rs had been approved by mail-in ballot, that the ballots would be verified, and that the CC & Rs would be recorded with the county. The

final vote was 149 in favor of the CC & Rs, 26 opposed, and 87 abstaining (about 57% of the 262 lot owners voted in favor of the amended CC & Rs). Plaintiffs did not complain about nor comment on either the mail-in balloting procedure or the CC & Rs until the CC & Rs had been recorded by the Trustees.

¶ 7 Plaintiffs filed their complaint on January 21, 1997. The Trustees filed a motion for summary judgment on November 26, 1997.[1] The trial court granted partial summary judgment to the Trustees on May 28, 1998.

¶ 8 Following entry of summary judgment for the Trustees, Plaintiffs obtained the ballots cast by the homeowners and also procured affidavits from other Highland Estates homeowners stating that they did not receive notice of the balloting. Plaintiffs presented this information to the trial court in a Rule 60(b) motion to reconsider summary judgment. *See* Utah R. Civ. P. 60(b). On March 3, 1999, the trial court denied Plaintiffs' motion to reconsider and certified the court's May 28, 1998 order as a final order and judgment.

¶ 9 Plaintiffs now appeal both the summary judgment and the denial of their motion to reconsider.[2]

## ANALYSIS

¶ 10 The trial court concluded as a matter of law "that the mail-in ballot voting procedure substantially complied with the Bylaws and [CC & Rs] in place and that no prejudice to the homeowners of Highland Estates occurred as a result of mail-in balloting." Plaintiffs argue the amended CC & Rs are

1. Plaintiffs did not file a cross motion for summary judgment.

2. Because we reverse the grant of summary judgment, we need not reach the issue of whether the motion to reconsider was properly denied.

3. The Trustees argue that we should review their decision to use mail-in balloting under the business judgment rule. However, we find no support in Utah case law for the proposition that a corporation's adherence to required procedure, as opposed to its substantive decisions, is entitled to such deferential review. Rather, our case law indicates that the propriety of the Trustees' acts presents a question of law and that we should

ineffectual because mail-in balloting is prohibited by the Utah Nonprofit Corporations statute and the Association's by-laws.

## Standard of Review

¶ 11 " 'The interpretation of a statute is a question of law, which we review for correctness.' " *Provo City v. Cannon,* 1999 UT App 344, ¶ 5, 994 P.2d 206 (citations omitted). In addition to the statute under which a corporation is formed, a corporation's articles of incorporation and by-laws constitute a contract between the corporation and its members. *See Workman v. Brighton Properties., Inc.,* 1999 UT 30, ¶ 10, 976 P.2d 1209 (citing *Turner v. Hi–Country Homeowners Ass'n,* 910 P.2d 1223, 1225 (Utah 1996)). Interpretation of contracts is likewise a question of law we review for correctness. *See Nova Cas. Co. v. Able Constr., Inc.,* 1999 UT 69, ¶ 6, 983 P.2d 575.[3]

## Required Voting Procedure

¶ 12 Plaintiffs argue the Trustees could only modify the CC & Rs through a duly called meeting of the members of the Association. We agree.

¶ 13 The 1972 CC & Rs, which the Trustees purported to amend through the mail-in balloting process now at issue, provide for amendment by vote of owners holding a majority of the lots in the subdivision, but do not specify a voting procedure.[4] However, by incorporating into a homeowners association, the homeowners bound themselves to the requirements of Utah's Nonprofit Corporations statute. *See, e.g., Village of Brown Deer v. City of Milwaukee,* 16 Wis.2d 206, 114 N.W.2d 493, 497 (1962)

employ the usual rules of statutory and contract interpretation. *See Reedeker v. Salisbury,* 952 P.2d 577, 583 (Utah Ct.App.1998).

4. The 1972 CC & Rs provide:

These Conditions shall run with the land and shall be binding upon all parties and all persons claiming under them until March 10, 1982, at which time said Conditions and Covenants shall be automatically extended for successive periods of ten (10) years, unless by vote of the owners of a majority of the lots in said Subdivision, it is agreed to change said Conditions in whole or in part.

(requiring corporation to follow statutory procedures for action in absence of directors' meeting and noting: "Those who would enjoy the benefits that attend the corporate form of operation are obliged to conduct their affairs in accordance with the laws which authorize them.").

¶ 14 Generally, the shareholders of a corporation "have no power to act as or for the corporation except at a corporate meeting called and conducted according to law except in those jurisdictions that specifically provide for corporate action by shareholders without a meeting." W. Fletcher, 5 *Cyclopedia of the Law of Private Corporations,* § 1996 (1996). Utah adopted this general rule in its Nonprofit Corporation Act (Act). Utah Code Ann. §§ 16-6-18 to -112 (1999). The Act calls for action by members of the corporation at either annual or special meetings of members, *see id.* § 16-6-27, at which members may vote in person or by proxy. *See id.* § 16-6-30 (permitting voting by proxy if not prohibited by articles of incorporation or by-laws of corporation). Action by the members in the absence of a meeting requires unanimous written consent by the members. *See id.* § 16-6-33. That is,

Any action required by this act to be taken at a meeting of the members ... of a nonprofit corporation, or any action which may be taken at a meeting of the members ... may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the members entitled to vote with respect to the subject matter thereof.[5]

¶ 15 It is undisputed that the Trustees received only 175 total ballots and only 149 ballots in favor of the revised CC & Rs. The Trustees therefore lacked unanimous written consent to amend the 1972 CC & Rs in the absence of a shareholders meeting. The Trustees therefore did not strictly comply with the Act's requirement of unanimous written consent.

¶ 16 Nor did the Trustees comply with the voting procedures specified by the Association's by-laws. The Association's by-laws contemplate action taken only at a duly constituted meeting. For example, Section 2.5 of the by-laws, titled "Voting Requirements," provides: "When a quorum is present in person or represented by proxy *at any meeting,* the vote of a majority of the membership present in person or by proxy shall decide any question brought before *such meeting.* ... All votes may be cast be the members *either in person or by proxy.*" (Emphasis added.) It is clear that the trustees did not comply with the voting procedures required by the Act and by their own by-laws. *See Reedeker v. Salisbury,* 952 P.2d 577, 582 (Utah Ct.App.1998) ("[B]ecause the Association is a corporation, it may not act in any way not authorized in its ... articles of incorporation or bylaws." (citations omitted)); *National Dev. Co. Inc. v. Trusteeship of Woodland Lakes,* 643 F.Supp. 561, 563 (E.D.Mo.1986) (holding only votes taken in compliance with corporate constitution and by-laws binding).

¶ 17 The Trustees argue, and the trial court concluded, that they substantially complied with the statutory and by-law voting requirements. However, we have stated:

When determining whether substantial statutory compliance as opposed to strict statutory compliance should be permitted, we must ... ascertain whether full protection under the statute would still be enjoyed by the party the statute seeks to protect. If "substantial ... compliance satisfies the policy of the statute[,]" then strict compliance is not in order.

*Badger v. Madsen,* 896 P.2d 20, 23 (Utah Ct.App.1995) (citations omitted). *Badger* involved a nonprofit corporation's compliance with Utah Code Ann. § 16-6-61 (1991). *See id.* at 21-22. Section 16-6-61 requires that a nonprofit corporation intending to encumber substantially all of its assets provide notice that a vote on that issue will be taken at the meeting. *See id.* at 22-23. Because the notice provision was intended to protect the shareholders' rights, we required strict compliance. *See id.* at 23.

¶ 18 We conclude the present case raises the same concerns. The Act's require-

---

**5.** Defendants somehow construe this section to require unanimous written consent only if the action to be taken is amendment of the articles of incorporation. We do not understand how defendants arrive at that conclusion.

ment that Association members act only at a duly called meeting protects the rights of the members and is therefore for their benefit. *See id.* The Association included a similar protection in its by-laws, which, like the Act, contemplate actions taken only at a duly constituted meeting of Association members. That by-law, like the Act, protects the Association's members by requiring that member actions be taken at member meetings where free discussion and dissent can be heard. Absent a meeting, the homeowners' consent must be unanimous.

¶ 19 We conclude that, because the voting procedures protect the members' interests, they are mandatory rather than directory and therefore strict compliance is required. Because the mail-in balloting procedure did not comply strictly with either the Act or the Association's by-laws, we conclude it was ineffectual.

### Waiver

¶ 20 The Trustees argue that, even if mail-in balloting did not comply with required procedures, we should uphold summary judgment for defendants because Plaintiffs waived their objections to the mail-in balloting procedure. The Trustees argue that Plaintiffs waived their objections to procedural irregularities because, although Plaintiffs had full knowledge of the mail-in balloting procedure, Plaintiffs made no objection to the procedure until after the amended CC & Rs were recorded.

¶ 21 The Trustees base their argument on Section 2.8 of the by-laws, which provides:

All inaccuracies and/or irregularities in calls, notices of meeting and in the manner of voting, form of proxies, credentials and method of ascertaining those present, shall be deemed waived if no objection is made *at the meeting.*

6. This court has said that "when shareholders attend and participate in a meeting, either in person or by proxy, they cannot later claim that any action taken at the meeting was invalid because of improper notice." *Badger,* 896 P.2d at 24. However, we have found no case where mail-in ballots were counted in the absence of a meeting called for the purpose of an election. A finding of waiver in this case would therefore be without precedent.

(Emphasis added.) This by-law plainly applies to waiver of procedural irregularities at a duly convened meeting. This provision thus does not apply where no meeting is convened and the lack of a meeting forms the basis of Plaintiffs' complaint.

¶ 22 Furthermore, the Trustees cite no authority for their proposition that a member of a corporation waives an objection to the manner of voting where the voting was not conducted at a duly called meeting. Our independent research has found no case in which a plaintiff was held to have waived a claim where proxies were not presented at a meeting,[6] nor where fewer than the required written consents were obtained for action without a meeting.[7] We therefore conclude that Plaintiffs did not waive their objections.

### CONCLUSION

¶ 23 The statutory and by-law provisions requiring that action by members of a non-profit corporation be taken only at a duly convened meeting protect the interests of the members of the association; strict compliance with these provisions is therefore required. Because the mail-in balloting procedure did not comply strictly with the Utah Nonprofit Corporations Act or the Association's by-laws, the procedure was ineffectual and summary judgment for the Trustees was error. Furthermore, Plaintiffs did not waive their objections to the mail-in voting procedure. We therefore reverse the trial court's grant of summary judgment.

¶ 24 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and RUSSELL W. BENCH, Judge.

7. On the contrary, courts set aside the actions of a corporation where the required written consents were not obtained. *See, e.g., Barsam v. Pure Tech Int'l, Inc.,* 864 F.Supp. 1440, 1452–53 (S.D.N.Y.1994) (setting aside amendment to corporation by-laws where written consents were obtained from only 57 percent of shareholders but by-law required 100 percent and statute required 67 percent).