2006 UT App 507

**PARK WEST CONDOMINIUM ASSOCIATION, INC., Plaintiff and Appellee,**

v.

**Lawrence K. Deppe, Judith S. DEPPE, and Bryan T. Morgan, Defendants and Appellants.**

**No. 20050800–CA.**

Court of Appeals of Utah.

Dec. 21, 2006.

Steven R. McMurray, Bradley L. Tilt, and Joan M. Andrews, Fabian & Clendenin, Salt Lake City, for Appellants.

Denver C. Snuffer Jr. and Bret W. Reich, Nelson Snuffer Dahle & Poulson, PC, Sandy, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 This is an interlocutory appeal from the trial court's summary judgment rulings resolving a dispute regarding who must pay a special assessment levied by a condominium association against one of its condominium units. We reverse.

## BACKGROUND

¶ 2 Plaintiff Park West Condominium Association, Inc. (the Association) is a nonprofit corporation, duly organized and existing under the laws of the State of Utah, that acts as the administrative body that controls and manages the Park West Condominiums Project in Park City, Utah. The Association is comprised of members who own units within the Park West Condominiums Project. And the Association operates under the "Condominium Declaration for Park West Condominiums" (the Condominium Declaration), which the project's developer recorded with the county recorder in 1977 and which has been amended in various respects since it was originally recorded.

¶ 3 In the fall of 2000, the Association sought to obtain its members' approval of a proposal to levy a special assessment to fund substantial improvements and renovations to the Park West Condominiums Project. There is no dispute that at the time the Association sought approval of the proposed special assessment, the Condominium Declaration provided that the special assessment could not be levied without "having been first voted on and approved by at least a majority of the Project's undivided ownership interest." It is also undisputed that, concerning membership approval of the special assessment, the Condominium Declaration provided:

> In any case in which the [Utah Condominium Ownership] Act or this Declaration requires the vote of a stated percentage of the Project's undivided ownership interest for authorization or approval of a transaction, such requirement may be fully satisfied by obtaining, with or without a meeting, consents in writing to such transaction from Unit Owners who collectively hold at least the stated percentage of undivided ownership interest.

Pursuant to the Condominium Declaration's provisions, the Association chose to seek majority approval of the proposed assessment through a mail-in ballot procedure, in lieu of taking a vote at an annual or special meeting. Accordingly, the Association sent each of its members a ballot package in October 2000 and encouraged its members to vote and return the completed ballot by November 15, 2000.

¶ 4 The returned ballots were tallied on November 19, 2000. The results revealed that 64% of the members entitled to vote had

approved the special assessment, with 19% of the members voting against the special assessment and 17% of the members not voting. Given the majority approval of the special assessment, the Association levied the assessment and recorded a "Notice of Special Assessment" on December 15, 2000. The Association also sent copies of the notice to its members in January 2001. The assessment was to be paid in two installments, due on February 28, 2001, and June 28, 2001.

¶ 5 Defendants Lawrence K. and Judith S. Deppe owned a condominium unit in the Park West Condominiums Project when the Association sought to obtain approval of the special assessment.[1] On December 13, 2000—two days before the Association recorded the Notice of Special Assessment—the Deppes entered into a "Real Estate Purchase Contract" to sell their condominium unit to Bryan T. Morgan. Later, on January 2, 2001, the Deppes gave Morgan a warranty deed to the condominium unit, and on January 5, 2001, Morgan and the Deppes executed an "Assumption Agreement," which was "in favor and for the benefit of" the Association. In spite of the terms of the Assumption Agreement,[2] the special assessment in the amount of $32,965 on the Deppes'—now Morgan's—condominium unit was not paid by either the Deppes or Morgan on the designated due dates.

¶ 6 The Association commenced legal action against the Deppes and Morgan to collect the past due assessment, plus interest. The Deppes answered, denying any liability for the assessment on several grounds, and a default judgment was entered against Morgan. After discovery, the remaining parties then filed cross-motions for summary judgment. The Association asked the court to enforce the special assessment against the Deppes, arguing that despite the Real Estate

Purchase Contract the Deppes had entered into with Morgan, the Deppes were the owners of the condominium unit at the time the assessment was levied, that the Deppes were jointly and severally liable for the unpaid assessment, and that under the terms of the Assumption Agreement the Deppes had acknowledged their liability for the assessment.

¶ 7 The Deppes asked the trial court to rule, as a matter of law, that the assessment was void because the mail-in ballot procedure failed to comply with the requirements of the Utah Nonprofit Corporation and Co-Operative Association Act (the Nonprofit Corporations Act) and Utah's Condominium Ownership Act (the Condominium Act). The Deppes asserted that under those statutes a mail-in vote must be unanimous and, thus, that approval by majority vote was not sufficient to render the assessment valid. Alternatively, the Deppes argued that they were not personally liable for the assessment because (1) equitable title to the condominium unit shifted to Morgan upon his signing the real estate contract, which occurred before the assessment was recorded, and (2) the Assumption Agreement itself was unenforceable.

¶ 8 The trial court granted the Association's motion for summary judgment and denied the Deppes' cross-motion for summary judgment. The court ruled that the special assessment was valid, as a matter of law, because the Association's mail-in ballot procedure was expressly permitted by the Association's own Condominium Declaration. The court reasoned that because the Condominium Act authorizes the Association to promulgate a comprehensive declaration and because the Condominium Declaration provided for majority approval by mail-in ballot, the Condominium Declaration controlled and

---

1. The Deppes were part of the 17% of the Association's membership who did not vote on the proposed special assessment.

2. Among other things, the Assumption Agreement stated that the Deppes, as the sellers of the condominium unit, "are personally obligated to pay the special assessment." While the Assumption Agreement specifically provided that Morgan was to "assume[ ] all of [the Deppes'] obligations to [the Association]" upon the transfer of the condominium unit, the Assumption Agree-

ment also clearly stated that it "does not release the [Deppes] from liability to the [Association] for the special assessment." We nevertheless determine that the effect of the Assumption Agreement hinges on the validity of the assessment itself because, as the trial court correctly noted, "the Deppes['] obligation is not derived from the assumption agreement" alone, but from their membership in the Association as owners of a condominium unit at the time of the assessment.

neither the Condominium Act nor the Non-profit Corporations Act came into play on the question of mail-in voting. The court also ruled that although the Deppes had entered into a purchase agreement with Morgan before the special assessment was recorded, the Deppes remained in possession of the unit and bore the risk of loss until the sale closed, thus making them responsible for paying the claimed assessment. The court further concluded that the Assumption Agreement did not affect or alter their obligation to pay the assessment. The Deppes now appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 9 The pivotal issue on appeal is whether the trial court correctly concluded that the special assessment was validly approved by majority vote or whether, as the Deppes contend, the assessment is void because Utah law required that the Association's mail-in vote garner the unanimous consent of its members before the assessment could be validly imposed. Because the trial court decided the issue on summary judgment, and because "[b]y definition, a summary judgment is based solely on conclusions of law[,] . . . we review a summary judgment for correctness, without deferring to the trial court's legal determinations." *Allen v. Prudential Prop. & Cas. Ins. Co.*, 839 P.2d 798, 800 (Utah 1992).[3]

## ANALYSIS

¶ 10 To resolve the dispute concerning whether the special assessment was validly levied after being approved via mail-in ballot by the majority of the Association's members—or whether unanimous consent to the assessment was required—we must first determine what authority controls the mail-in ballot procedure the Association used to seek approval of the assessment. The Association asserts that in order to decide whether the special assessment in this case needed to be approved by majority vote or by the unanimous consent of its members, this court need not look beyond the Condominium Declaration that the Association adopted pursuant to

the Condominium Act. *See* Utah Code Ann. §§ 57–8–10,–34(1) (2000). The Association urges us to conclude, as did the trial court, that the provisions of the Association's Condominium Declaration control and that under the Condominium Declaration, the Association was duly authorized to gain its members' approval of the assessment by a majority vote obtained by way of a mail-in ballot.

¶ 11 The Deppes, on the other hand, assert that statutory provisions are controlling and that although the Condominium Act is silent concerning mail-in ballot voting, other applicable provisions of Utah law fill the gap and dictate the proper mail-in voting procedure. The Deppes specifically argue that in addition to being subject to the Condominium Act, the Association is also subject to the Nonprofit Corporations Act, *see* Utah Code Ann. §§ 16–6–18 to–112 (1999), which provides that a mail-in vote must be unanimous to approve a proposed action. *See id.* § 16–6–33.

¶ 12 If, as the Association contends, the Condominium Declaration controls in this case, the Condominium Declaration clearly authorizes the mail-in ballot method the Association used to obtain approval of the special assessment. The Deppes' point is well-taken, however, that the Condominium Declaration and Condominium Act do not constitute the exclusive source of authority concerning the Association and its unit owner members. The Condominium Act clearly and specifically acknowledges that its provisions "shall be in addition and supplemental to *all other provisions of law*, statutory or judicially declared." Utah Code Ann. § 57–8–35(1) (2000) (emphasis added).

¶ 13 In most instances the Condominium Act will provide the definitive answer to issues that arise out of the operation of condominium associations. *See Reedeker v. Salisbury*, 952 P.2d 577, 584 (Utah Ct.App.1998) ("The Condominium Act provides significant guidance as to the operation of condominium associations."). The same might also be said of the direction that a declaration, adopted

---

3. Because we reverse the trial court's conclusion concerning the validity of the assessment, we need not reach the remaining issue decided on summary judgment, i.e., whether the Deppes were the owners of the condominium unit at the time the special assessment was levied.

pursuant to the Condominium Act, provides an association. Yet the Condominium Act makes it abundantly clear that other layers of controlling Utah law continue to govern the operation of condominium associations to the extent that such other provisions do not conflict with those expressed in the Condominium Act. *See* Utah Code Ann. § 57–8–35(1).

¶ 14 The *Reedeker* case is illustrative of how other provisions of Utah law apply to condominium associations. In *Reedeker,* this court was required to decide what standard of care applied to trustees of a condominium association and under what circumstances trustees could be held personally liable for actions taken on behalf of the association. *See* 952 P.2d at 583. Noticeably absent in the Condominium Act, however, was any provision "defining the personal liability of condominium association trustees." *Id.* at 584. Guided by the Condominium Act's "clear and unambiguous" indication that "[t]he provisions of [the Condominium] Act 'shall be *in addition and supplemental to* all other provisions of law,' " *id.* at 585 (quoting Utah Code Ann. § 57–8–35(1) (Supp.1997)) (emphasis in original), this court turned to other provisions of law applicable to the condominium association to determine the applicable standard of care. *See id.* at 586.

¶ 15 In *Reedeker,* this court ultimately concluded that the Nonprofit Corporations Act provided the proper standard despite the plaintiffs' insistence that the Business Corporations Act's less rigorous standard of care governing for-profit corporations ought to apply. *See id.* at 585–86. This court decided that the Nonprofit Corporations Act appropriately applied to the condominium association because the association was not organized for the object of receiving pecuniary gain and had in fact incorporated as a nonprofit corporation under the Nonprofit Corporations Act. *See id.* at 585–86. *Reedeker* instructs, then, that in the case of a condominium association formed as a nonprofit corporation under the laws of Utah, the Nonprofit Corporations Act supplements the Condominium Act and controls the association on matters where the Condominium Act is silent.

¶ 16 The Association aptly points out, however, that the instant matter is in one respect distinguishable from *Reedeker.* The Association's Condominium Declaration here specifically provides that the Association may seek approval of measures by a majority vote conducted by mail-in ballot, while the condominium association's declaration in *Reedeker* was silent concerning the standard of trustee liability. The Association contends that the declaration's silence—in addition to the Condominium Act's silence—forced the *Reedeker* court to turn to and rely on the Nonprofit Corporations Act. A second case—which presented this court with a fact pattern involving a mail-in ballot procedure somewhat similar to the facts in the present matter—suggests, however, that the statutory provisions of the Nonprofit Corporations Act would have been held to apply in *Reedeker* even if the association included a provision in its declaration concerning trustee liability that was at odds with the one in the Nonprofit Corporations Act. *See Levanger v. Vincent,* 2000 UT App 103, 3 P.3d 187.

¶ 17 In *Levanger,* the plaintiffs cried foul when the homeowners association approved amendments to the association's covenants, conditions, and restrictions by mail-in ballot rather than at an annual or special meeting. The plaintiffs argued that the association was subject to the Nonprofit Corporations Act, which required that any action taken by a mail-in ballot vote be by unanimous consent of the members. *See id.* at ¶ 14. The plaintiffs further argued that approval of the amendments, which in that case had been by a majority rather than unanimously, was also ineffectual because the amendments had not been approved at an annual or special meeting in accordance with the association's own bylaws. *See id.* at ¶ 10. This court agreed with both of the plaintiffs' arguments and concluded that the association had not "strictly compl[ied] with the [Nonprofit Corporations] Act's requirement of unanimous written consent," *id.* at ¶ 15, and that such voting procedures were "mandatory rather than directory." *Id.* at ¶ 19. The court also concluded that the mail-in ballot procedure was ineffectual because it did not square with the association's bylaws. As the court ob-

served, the association's bylaws were designed to protect its members' rights the same way the unanimous consent requirement of the Nonprofit Corporations Act did "by requiring that member actions be taken at member meetings where free discussion and dissent can be heard. Absent a meeting, the homeowners' consent must be unanimous." *Id.* at ¶ 18.

¶ 18 Importantly, the *Levanger* court determined that "by incorporating into a homeowners association, the homeowners bound themselves to the requirements of Utah's Nonprofit Corporations statute." *Id.* at ¶ 13. In other words, because the homeowners association enjoyed its corporate form of government by having incorporated as an association under the Nonprofit Corporations Act, it was bound by provisions of the very law that authorized its existence. *See id.* (citing *Village of Brown Deer v. City of Milwaukee,* 16 Wis.2d 206, 114 N.W.2d 493, 497, *cert. denied,* 371 U.S. 902, 83 S.Ct. 205, 9 L.Ed.2d 164 (1962)). Thus, the association in *Levanger* could not skirt the requirements of the Nonprofit Corporations Act concerning voting and was required to strictly comply with the Act's provisions.

¶ 19 The Association, however, contends that *Levanger* is distinguishable from the instant case and, consequently, is of little assistance in answering the question presented. The Association points out that in *Levanger* the homeowners association's controlling documents were silent on mail-in voting and specified that amending actions must be taken at member meetings, *see id.* at ¶¶ 13, 16, whereas the Condominium Declaration in this case is not silent and specifically allows the Association to obtain approval of proposed measures by a majority vote via mail-in balloting. But we are not convinced that *Levanger* would have turned out any differently even if the association's bylaws did provide for the amendments to be approved by a majority of the members using a mail-in ballot. The *Levanger* court used strong and precise language concerning the "mandatory rather than directory" nature of the voting procedures included in the Nonprofit Corporations Act, and concluded that the association was required to "comply strictly" with

those voting procedures. *Id.* at ¶ 19. It would appear, therefore, that even if the association's voting procedure had complied with specific provisions in its own bylaws that were at odds with the Act's requirements, the court still would have determined that the vote was ineffectual given the association's failure to strictly comply with the Nonprofit Corporations Act's unanimous written consent requirement.

¶ 20 The statutes under which a corporation is formed constitute the preeminent authority governing the corporation, making other sources of corporate authority and governance—e.g., resolutions, bylaws, and declarations—inferior to and subject to the controlling statutes. *See* Utah Code Ann. § 16–6–22(12) (1999) (stating that nonprofit corporations have power "[t]o make and alter bylaws, or resolutions, not inconsistent with ... the laws of this state"). *See also Harding v. Heritage Health Prods. Co.,* 98 P.3d 945, 948 (Colo.Ct.App.) (holding corporation's bylaw amendment void because it was inconsistent with state law), *cert. denied,* 2004 WL 2334871, 2004 Colo. LEXIS 829 (Colo. Oct. 18, 2004); *Lange v. Lange,* 520 N.W.2d 113, 118 (Iowa 1994) (stating that corporations are "restricted to by-laws that are not inconsistent with the law"); *Swanger v. National Juvenile Law Ctr.,* 714 S.W.2d 170, 171–72 (Mo.Ct.App.1986) (stating that "a corporation's bylaw if repugnant to a statute must give way to the statute's superior authority"). As a result, we conclude that the Nonprofit Corporations Act's provisions concerning mail-in voting apply and trump the inconsistent provisions of the Association's Condominium Declaration.

¶ 21 It is undisputed here that the Association chose to incorporate under the laws of Utah as a nonprofit corporation. The fact that the Association has also subjected itself to the Condominium Act and adopted a Condominium Declaration pursuant to that Act does not, however, diminish the controlling effect the Nonprofit Corporations Act continues to have on the Association to the extent the Nonprofit Corporations Act's provisions are not in conflict with those of the Condominium Act. *See* Utah Code Ann. § 57–8–35(1) (2000). *See also Levanger v. Vincent,*

2000 UT App 103, ¶ 13, 3 P.3d 187; *Reedeker v. Salisbury*, 952 P.2d 577, 585 (Utah Ct.App. 1998).

¶ 22 At the time this dispute arose, the Nonprofit Corporations Act clearly provided:

Any action required by this act to be taken at a meeting of the members or trustees of a nonprofit corporation, or any action which may be taken at a meeting of the members or trustees may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by *all* of the members entitled to vote with respect to the subject matter thereof, or all of the trustees, as the case may be.

Utah Code Ann. § 16–6–33 (1999) (emphasis added). The Association chose to conduct a vote on the special assessment via mail-in ballot instead of holding a vote at a meeting of its members, and it is undisputed that the assessment did not pass by unanimous vote. We therefore determine that the special assessment in this case was not validly approved by the mail-in ballot and, thus, not validly levied. Accordingly, we reverse the trial court's summary judgment ruling concerning the validity of the assessment and conclude that the Association failed to properly obtain its members' approval of the special assessment, thus rendering the assessment invalid.[4]

## CONCLUSION

¶ 23 We reverse the trial court's summary judgment order holding that the Nonprofit Corporations Act did not apply to the Association's mail-in ballot approval of the spe-cial assessment. We conclude that where the Condominium Act is silent concerning the proper procedure for obtaining member approval of measures via mail-in ballot, provisions in the Nonprofit Corporations Act apply to the Association. The Nonprofit Corporations Act and its provisions requiring unanimity where approval is sought by mail-in ballot are superior to the provisions of the Association's Condominium Declaration, which only requires majority approval of the assessment. As a result, the assessment was not validly approved by the mail-in ballot procedure implemented by the Association and is not enforceable against the Deppes. We remand for such proceedings as may now be in order.[5]

¶ 24 WE CONCUR: JAMES Z. DAVIS, Judge and WILLIAM A. THORNE JR., Judge.

4. We recognize the difficulty the Association faced in trying to find the best way to obtain its members' approval of the proposed assessment. The seasonal use of condominiums located near a ski resort, combined with the reality that many of the condominium owners live out-of-state, would perhaps make it nearly impossible for the Association to gather a majority of its members for an annual—not to mention a special—meeting to seek approval of proposals. Given these difficulties, implementing a procedure to obtain member approval by mail-in ballot certainly provides a realistic alternative to the dilemma posed by the annual or special meeting requirement. Yet, requiring a mail-in vote to pass by unanimous consent, rather than by the majority vote that would be sufficient at a meeting, lessens the appeal of a mail-in vote as a realistic alternative since there will likely be at least one naysayer among the members when it comes to spending money for improvements.

Perhaps our Legislature had such difficulties in mind when it amended the Nonprofit Corporations Act to no longer require unanimous consent to actions taken without meetings, *see* Utah Code Ann. § 16–6a–707 (2005), and to specifically address the use of mail-in ballots to approve corporate actions. *See id.* § 16–6a–709. With such changes to Utah law, condominium associations will not likely continue to face the same problem addressed in this case when measures are approved by a majority of their members using a properly authorized mail-in ballot procedure.

5. It follows that the Association's request for attorney fees incurred on appeal is unavailing.