2019 UT App 69

# THE UTAH COURT OF APPEALS

SAM PINO, JEANNE R. THOMAS, TODD PALMER, AND JODIE PALMER,
Appellants,
*v.*
ENTITY #4812420-0140,
Appellee.

Opinion
No. 20160294-CA
Filed May 2, 2019

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 140903403

Thomas N. Crowther, Bret J. Crowther, Matthew S.
Brahana, and Christopher Bond, Attorneys
for Appellants

J. Craig Smith and Kathryn J. Steffey, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1 Rather than drawing from their reservoir of cooperative experience, the users of a water well dispute how their mutual association should continue. A nonprofit water corporation failed to renew its registration and was administratively dissolved. A group of shareholders (Appellants) contended that, upon dissolution, the corporation's articles of incorporation and bylaws required its assets to be liquidated and the proceeds distributed to the corporation's shareholders. Appellants claim that the trial court erred in granting summary judgment in favor of the corporation when it determined that the corporation

properly distributed its assets to a successor corporation. We affirm.

BACKGROUND

¶2    In 1997, a group of lot owners in the Brighton Estates Subdivision in Wasatch County entered into an agreement to drill a well to provide water to the subdivision. In 2000, the group formed a nonprofit corporation, Entity #4812420-0140, commonly known as The Well Corporation (TWC 2000), to own, finance, and oversee the installation of a culinary water distribution system and thereafter to own and operate the well and water distribution system. The well was drilled on land owned by the Ault Family Trust (Trust) and used for the stated purpose.

¶3    In 2007, Michael Ault, as a representative and agent of the Trust, was elected to TWC 2000's board of directors. And in November 2008, the Trust granted an easement to TWC 2000 to provide access for the operation and maintenance of the water well.

¶4    In December 2010, while Ault was still serving on the board, TWC 2000's registration with the Utah Division of Corporations and Commercial Code (Division) expired and was not renewed. In February 2012, a new board of directors (Directors) was elected, but it was not aware of TWC 2000's expired corporate status. The Directors discovered the expired status more than two years after TWC 2000's registration had expired.

¶5    As a result, in February 2013, the Directors formed The Well Corporation 2013 (TWC 2013) to function in the place of TWC 2000 and receive the assets and liabilities of TWC 2000. In October 2013, TWC 2000 executed an assignment (2013 Assignment) transferring all of its assets and obligations to

TWC 2013 so that TWC 2000's shareholders could continue to receive water from the well. In May 2014, Appellants, who consist of a group of dissenting shareholders, commenced this action against TWC 2000 in the trial court seeking, among other relief, confirmation of TWC 2000's dissolution, liquidation of TWC 2000's assets, return of such assets to TWC 2000's shareholders, and the return of the easement to the Trust.

¶6    In August 2014, the Division reinstated TWC 2000, and the two companies rescinded the 2013 Assignment, leaving all the assets in TWC 2000's ownership. In September 2014, TWC 2000 held a shareholder meeting, at which a majority of TWC 2000's shares were represented, and ninety-five percent of those shares present voted to ratify the Directors' actions in (1) forming TWC 2013 to act as a successor corporation and (2) causing TWC 2000 to be reinstated.

¶7    Appellants then filed an objection with the Division to TWC 2000's reinstatement, and in October 2014, the Division placed TWC 2000 "in pending status awaiting the outcome of the litigation." In response, TWC 2000 and TWC 2013 enacted a conditional recession agreement providing that the 2013 Assignment would remain effective until TWC 2000 was restored to active status by the Division.

¶8    In the present proceeding, the trial court considered but rejected Appellants' arguments, granted TWC 2000's motion for summary judgment, and denied Appellants' cross-motion for summary judgment, concluding that "Utah law does not require a post-dissolution distribution to comply with the dissolved corporation's Articles of Incorporation and Bylaws," (Articles) and, even if the law "did require [TWC 2000] to distribute its assets after dissolution in accordance with its [Articles], such a requirement has been satisfied in this case." Appellants appeal the judgment of the trial court.

ISSUES AND STANDARDS OF REVIEW

¶9 The first issue on appeal is whether the Utah Revised Nonprofit Corporation Act (Act), *see* Utah Code Ann. §§ 16-6a-102 to -1702, authorized the transfer of TWC 2000's assets and liabilities to a successor corporation or whether the assets were required to be distributed in accord with TWC 2000's Articles. The second issue on appeal is whether an administratively dissolved corporation can be reinstated by the Division even if the corporation failed to make an application for reinstatement within two years after its dissolution.

¶10 Both issues involve questions of statutory interpretation and the standard for granting summary judgment. "We review questions of statutory interpretation for correctness, affording no deference to the [trial] court's legal conclusions." *Grimm v. DxNA LLC*, 2018 UT App 115, ¶ 14, 427 P.3d 571 (cleaned up). And "[w]e review a [trial] court's legal conclusions and grant or denial of summary judgment for correctness, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Rapoport v. Martin*, 2018 UT App 163, ¶ 6, 432 P.3d 772.

ANALYSIS

I. Transfer of TWC 2000's Assets and Liabilities

¶11 The trial court ruled that TWC 2000's transfer of its assets and liabilities to TWC 2013 was proper under the Act. The trial court concluded that "Utah law does not require a post-dissolution distribution to comply with the dissolved corporation's [Articles]." Specifically, the trial court found that the Utah Code "expressly authorizes a nonprofit corporation to 'make distributions upon dissolution . . . to another nonprofit corporation, including a nonprofit corporation organized to receive the assets of and function in place of the dissolved

nonprofit corporation.'" (Quoting Utah Code Ann. § 16-6a-1302(2)(c).)

¶12    Appellants argue that the trial court erred by not giving effect to Article XII of TWC 2000's Articles, which states: "In the event of dissolution of [TWC 2000], each shareholder shall receive its proportionate share of [TWC 2000's] property and assets, including gains from the sale of appreciated assets, in proportion to the number of shares held." Appellants also note that the Act provides an alternative to the path taken by the court. Instead of distribution to a successor nonprofit corporation, distribution on dissolution of a nonprofit corporation may also be made "to its members if it is a mutual benefit corporation." Utah Code Ann. § 16-6a-1302(2)(b) (LexisNexis Supp. 2009).[1] Appellants conclude by asserting that given the choices (namely, distributing the assets to a successor nonprofit corporation or to the shareholders), the court erred in choosing the first:

> If there is a choice between two equally applicable
> contract alternatives,[2] and if one alternative does

---

1. Appellants rightly point out that TWC 2000 is a "mutual benefit corporation" because it is a nonprofit corporation "that issues shares of stock to its members evidencing a right to receive distribution of water or otherwise representing property rights." Utah Code Ann. § 16-6a-102(33)(a) (LexisNexis Supp. 2009).

2. Citing *Okelberry v. West Daniels Land Ass'n*, Appellants contend that Utah Code section 16-6a-302 and the Articles are part of the same contract between TWC 2000 and its shareholders. *See* 2005 UT App 327, ¶ 14, 120 P.3d 34 (stating that "the bylaws of a corporation, together with the articles of incorporation, the statute under which it was incorporated, and the member's

(continued…)

not give effect to all terms in the contract and another alternative does so, the alternative giving effect to all contract terms must govern. The trial court erred by applying and giving effect to the statutory alternative allowing transfer of TWC 2000 assets to TWC 2013 in violation of [the Articles] instead of the alternative directing distribution of the TWC 2000 assets to its shareholders in conformity with [the Articles].

¶13 Appellants' argument fails because it relies on a non-existent conflict between the Articles and the statutory options upon dissolution laid out in Utah Code section 16-6a-1302(2).[3]

---

(…continued)
application, constitute a contract between the member and the corporation" (cleaned up)).

3. We note that "[t]he statutes under which a corporation is formed constitute the preeminent authority governing the corporation, making other sources of corporate authority and governance—e.g., resolutions, bylaws, and declarations—inferior to and subject to the controlling statutes." *Park West Condo. Ass'n v. Deppe*, 2006 UT App 507, ¶ 20, 153 P.3d 821; *see also* Utah Code Ann. § 16-6a-202(1)(g) (LexisNexis Supp. 2012) ("The articles of incorporation [of a nonprofit corporation] shall set forth . . . provisions not inconsistent with law regarding the distribution of assets on dissolution."). In addition, TWC 2000's Articles state that the corporation was organized to "[d]o any and all acts and things, and to have and exercise all rights and powers from time to time granted to a corporation by law, including, without limitation, those powers described in the Utah Nonprofit Corporation and Cooperative Act, § 16-6-1 *et seq.*, U.C.A., (1953), as amended." In 2001, the Act replaced the Utah Nonprofit Corporation and Cooperative Act. *See* Bruce L.

(continued…)

Rather, we conclude that the Directors complied with the statutory scheme and TWC 2000's Articles. *See Olincy v. Merle Norman Cosmetics, Inc.*, 19 Cal. Rptr. 387, 394 (Cal. Dist. Ct. App. 1962) (stating that "where a by-law is reasonably susceptible of different constructions, one in harmony and the other in conflict with a statute, the former construction will be adopted" (cleaned up)); *see also Kahn v. Bank of St. Joseph*, 70 Mo. 262, 270 (Mo. 1879) (rejecting a construction of a bylaw as "unreasonable" when such construction is "in conflict with, if not the letter, at least with the spirit of many of our statutory provisions relative to this subject"). We now explain how the Directors complied with both the statutory scheme and the Articles.

¶14    First, the Directors complied with the statutory requirements. The Act provides that "[a]uthorized distributions by a dissolved nonprofit corporation may be made by authorized officers or directors," Utah Code Ann. § 16-6a-1302(4), as follows: (1) "to a member that is a domestic or foreign nonprofit corporation"; (2) "to its members if it is a mutual benefit corporation"; (3) "to another nonprofit corporation, including a nonprofit corporation organized to receive the assets of and function in place of the dissolved nonprofit corporation"; and (4) "otherwise in conformity to this chapter [i.e., chapter 6a]," *id.* § 16-6a-1302(2).[4] Under part 14, Dissolution, of chapter

_____

(…continued)

Olson, *Utah Revised Nonprofit Corporation Act*, 14 Utah B.J. 17, 17 (June/July 2001). Thus, insofar as provisions in TWC 2000's Articles regarding the distribution of assets after dissolution conflict with the Act, the Act governs because it enjoys preeminent authority under the Utah Code and TWC 2000's Articles.

4. Furthermore, the Act states that "[d]issolution of a nonprofit corporation does not . . . transfer title to the nonprofit

(continued…)

6a, a dissolved nonprofit corporation may transfer "its assets as provided in or authorized by its articles of incorporation or bylaws." *Id.* § 16-6a-1405(1)(c). The Directors chose the third option when they assigned TWC 2000's assets and liabilities to TWC 2013.

¶15 Second, the Directors complied with the Articles by distributing the assets of TWC 2000 after its dissolution. The Articles specifically provide in Article XII that "[i]n the event of dissolution of [TWC 2000], each shareholder shall receive its proportionate share of [TWC 2000's] property and assets, including gains from the sale of appreciated assets, in proportion to the number of shares held." The Directors observed this requirement when they assigned the corporation's assets and liabilities to the successor corporation. We note that TWC 2013 was "organized to replace and serve as successor-in-interest to [TWC 2000] for the benefit of all of the shareholders of [TWC 2000]." Furthermore, TWC 2013's Amended Articles of Incorporation (Amended Articles) are identical in every material respect to TWC 2000's Articles, including all provisions regarding internal governance processes, voting rights, and determining shareholders and directors. And TWC 2013's Amended Articles provided for TWC 2000's shareholders to be

---

(…continued)

corporation's property including title to water rights, water conveyance facilities, or other assets of a nonprofit corporation organized to divert or distribute water to its members." Utah Code Ann. § 16-6a-1405(3)(a) (LexisNexis Supp. 2009). Thus, the plain meaning of the statute is that the assets of a nonprofit water corporation do not automatically revert to the shareholders on dissolution. Rather, the Act makes clear that such assets of a dissolved water corporation are to be distributed in a deliberate fashion in accord with one of the four options identified in sections 16-6a-1302(2) and 16-6a-1405(1)(c).

issued shares in TWC 2013 once the new corporation filed its articles:

> To ensure continued water availability and delivery to the [members holding shares in TWC 2000] in the event the Division ultimately rescinds [TWC 2000's] reinstatement, [TWC 2000] has determined that it is necessary and appropriate for the Board of Directors of [TWC 2013] to cause these Articles of Amendment to be filed in order to ensure that [TWC 2013] *conforms in all respects* to the structure and operation of [TWC 2000], such that, upon any dissolution of [TWC 2000], [TWC 2013] shall be the successor-in-interest to [TWC 2000] and will be legally authorized to continue operations pursuant to Utah Code Ann. § 16-6a-1405. Upon the filing of these Amendments, *certificates will be issued* for the benefit of all eligible prospective Members.

(Emphases added.) TWC 2013's Amended Articles were subsequently filed on November 19, 2014.

¶16 Appellants contend that after TWC 2000 was dissolved, "shareholders did not receive the assets," rather "[t]he assets were transferred to TWC 2013." Appellants argue that the only way to give effect to Article XII is the "distribution of assets to TWC 2000's shareholders instead of the alternative of transfer of the assets to TWC 2013." But Appellants fail to acknowledge a key fact: TWC 2013's Amended Articles provided that TWC 2000's shareholders be issued shares of TWC 2013. Therefore, in transferring assets to TWC 2013 and investing TWC 2000's shareholders with shares in TWC 2013, the Directors gave Appellants precisely what they requested, namely, a proportionate share of TWC 2000's post-dissolution assets. Appellants appear to prefer that TWC 2000's assets be

liquidated, resulting in a monetary distribution. But that is not what Article XII called for upon dissolution. TWC 2013's Amended Articles provided TWC 2000's shareholders a proportionate share of the corporation's assets, albeit in the form of shares in the successor corporation.

¶17 Thus, we conclude that the Directors complied with the Act and the Articles when they distributed TWC 2000's assets in the form of shares in TWC 2013.[5]

---

5. Appellants also argue that because the proper notice procedure was not followed, the distribution of assets was invalid. But this argument is without merit. As the trial court explained, "[E]ven if Utah Code [section] 16-6a-1302(3) did require [TWC 2000] to distribute its assets after dissolution in accordance with its [Articles], such a requirement has been satisfied in this case." The court noted that the Directors delivered written notice, which referred to the legal challenge faced by TWC 2000, of the shareholders' meeting. The court further noted that the notice met the requirements of TWC 2000's bylaws, which stated that notice be given to shareholders "either personally, or by mailing a copy of the notice, . . . and by compliance with all conditions as provided in the Bylaws or rules and regulations adopted by the Board of Directors." Appellants argue that the notice TWC 2000 gave to shareholders was defective under Utah Code section 16-6a-1202 because it "did not give notice that ratification of transfer of all of TWC 2000's assets to TWC 2013 would be submitted to a vote at the meeting." But the provisions of section 16-6a-1202 do not apply here because "[a] transaction that constitutes a distribution is governed by Part 13" of the Act, which deals with distributions upon dissolution, and not by section 1202. Utah Code Ann. § 16-6a-1202(8) (LexisNexis 2009). Because part 13 of the Act has no notice requirements, *see id.* §§ 16-6a-1301 to -1302, the Directors

(continued…)

II. Reinstatement of an Administratively Dissolved Corporation

¶18   Appellants contend that an administratively dissolved corporation cannot be reinstated by the Division if the corporation fails to make an application for reinstatement within two years after its dissolution. They argue that "the trial court should have removed TWC 2000's pending status and ruled that it is irrevocably dissolved."

¶19   We decline to address this issue because Appellants failed to join the Division as a party to the proceedings below in accordance with rule 19 of the Utah Rules of Civil Procedure. Consequently, the trial court had no authority to enter directives binding on the Division. *See Hiltsley v. Ryder*, 738 P.2d 1024, 1025 (Utah 1987) ("Courts can generally make a legally binding adjudication only between the parties actually joined in the action."); *see also R.M.S. Corp. v. Baldwin*, 576 P.2d 881, 883 (Utah 1978) ("[N]o judgment was rendered against the corporation, and no judgment could have been so entered for the reason that the corporation was not before the court.").

¶20   Thus, we decline to address the issue of whether it was appropriate for the Division to reinstate TWC 2000 more than two years after its registration expired because the Division is not a party to this case and such a determination would result in the issuance of an advisory opinion.


CONCLUSION

¶21   We conclude that the trial court correctly granted summary judgment when it determined that the Directors

---

(…continued)
were required to comply only with the notice requirements found in TWC 2000's Articles.

properly transferred assets from TWC 2000 to TWC 2013. And because the Division was not joined as a party to the proceedings below, we decline to address whether it had the authority to reinstate TWC 2000 after more than two years had passed since the corporation's expiration.

———————